WESTERN UNION TELEGRAPH CO. v. LOUISVILLE & N. R. CO.

(District Court, W. D. Kentucky. December 28, 1912. On Motion to Dissolve Temporary Injunction, February 7, 1913.)

1. INJUNCTION (§ 136*)—PROCEEDINGS FOR DETERMINATION OF COMPENSATION—EQUITABLE RELIEF.

Where a telegraph company installing and operating on a railroad company's right of way a telegraph system, pursuant to a contract permitting such use of the right of way for a specified period, sought to condemn as authorized by state statute the right of way of the company in the state for the use of the system after the expiration of the period and the inability of the parties to agree on a future arrangement, the court pending determination of compensation would maintain the status quo by enjoining the railroad company from interfering with the system.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 305, 306; Dec. Dig. § 136.*]

2. COURTS (§ 266*)—JURISDICTION—INJUNCTION—PROPERTY OUTSIDE OF STATE.

Where a foreign telegraph company installed and operated on a domestic railroad company's right of way a telegraph system within and outside of the state as a single system, and it sought to condemn the property of the company in the state for use of the system in the state, the court pending determination of compensation would restrain the railroad company from interfering with the system outside of the state in view of the peculiar character of the property involved.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 806–808; Dec. Dig. § 266.*]

On Motion to Dissolve Temporary Injunction.

3. EMINENT DOMAIN (§ 47*)—ACQUISITION ON RAILROAD RIGHT OF WAY FOR TELEGRAPH SYSTEM—FEDERAL STATUTES.

Rev. St. U. S. § 3964 (U. S. Comp. St. 1901, p. 2707), declaring that all railroads or parts thereof in operation are post roads, does not interfere with the right of a state to authorize a telegraph company to condemn a right of way for a telegraph system installed and operated on a railroad right of way pursuant to a contract for such use for a specified time; the right of way sought to be taken by the telegraph company not preventing the railroad company from operating its railroad and carrying the mail.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 107–120; Dec. Dig. § 47.*]

4. INJUNCTION (§ 136*)—PROCEEDINGS FOR DETERMINATION OF COMPENSATION—EQUITABLE RELIEF.

Where a foreign telegraph company, installing and operating on a domestic railroad company's right of way a telegraph system within and outside of the state as a single system, sought to condemn a right of way in the state for use of the system in the state, a temporary injunction restraining the railroad company from interfering with the system would not be dissolved, as applied to the system in other states, merely because of the situation there, as to condemnation there, especially where

a severance, pendente lite, of the unified system at any point would injure the telegraph company's property in the state.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 305, 306; Dec. Dig. § 136.*]

5. INJUNCTION (§ 175*)—PROCEEDINGS FOR DETERMINATION OF COMPENSATION —EQUITABLE RELIEF.

The court, seeking to maintain the status quo by injunction, pending proceedings by a telegraph company, installing and maintaining a telegraph system on a railroad company's right of way, to condemn the railroad company's right of way for the system, will enjoin the railroad company, in possession and alone operating the railroad lines as lessee, from interfering with the telegraph system.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 388; Dec. Dig. § 175.*]

In Equity. Suit by the Western Union Telegraph Company against the Louisville & Nashville Railroad Company. Temporary injunction granted.

A. E. Richards and A. P. Humphrey, both of Louisville, Ky., for complainant.

Henry L. Stone, Helm Bruce, and Albert S. Brandeis, all of Louisville, Ky., for defendant.

EVANS, District Judge. From the very interesting and helpful argument of the motion for a temporary injunction the court has not only derived much benefit, but has found that a great deal could be said upon both sides of certain of the propositions discussed.

An action was brought in this court on the 9th day of July, 1912, for the condemnation of certain property of the Railroad Company to the uses of the Western Union Telegraph Company. It was contended at the hearing of various demurrers in that action that the law of Kentucky on which that action was based is unconstitutional and void, but the court held that this contention was not maintainable upon any ground. The court expressed in that case the view that the one dominant question was: What is the reasonable and fair compensation to be paid to the defendant for the property which, in the language of the Kentucky Statute (Ky. St. § 4679a), was "desired" by the Telegraph Company for its purposes—purposes which the state of Kentucky had decided to be the public ones? At this stage and in aid of the other suit, this action was brought, and the pending motion was made for the purpose, broadly stated, of preserving the present status while the question of just compensation was being litigated.

We will consider the motion from two standpoints, namely: First, as it bears upon defendant's property in Kentucky, to which the previously brought suit applies; and, second, as it bears upon the defendant's conduct respecting property outside this state.

## 1. As to Property in Kentucky.

[1] The affidavits read at the hearing certainly cover a very wide range, but we have not been impressed with the conviction that a great part of what they contain is instructively applicable to any ques-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tion involved in the motion now under consideration. As we view the first of the questions we have stated it is neither complex nor difficult. Indeed, it appears quite simple.

Acting under an agreement made with the Railroad Company over 25 years ago, the Telegraph Company from time to time at great expense installed upon defendant's right of way throughout Kentucky a large portion, to wit, about 1,500 miles, of its telegraph system. Under the same agreement the Telegraph Company has also, in actual and physical connection with its lines in this state, installed in other states upon rights of way of the defendant some 3,250 miles of its system. The system thus installed consists of continuous wires strung upon poles put in the ground probably about 160 feet apart. Various instruments and structures upon and along the lines of railway have been placed where necessary. The general character and appearance of complainant's plant is well known. Some months ago the contract between the parties pursuant to the manner it prescribes was terminated, and the parties have not been able to agree upon another arrangement nor as to the compensation to be given the defendant in the event any of its property should be taken. This condition, when reached, found all the poles, wires, apparatus, and structures actually remaining upon the Railroad Company's rights of way throughout Kentucky and various other states at the moment the contract terminated, and not only so, but all were then in active use and operation and apparently indispensable to the defendant as well as to the complainant. It is difficult to see how the Railroad Company could operate its line without the use for a considerable period of the Telegraph Company's property. Certainly it would have been disastrously inconvenient to the Railroad Company, if, at the precise moment of the termination of the contract, the plant of the Telegraph Company had ceased to be available or operative. In this situation and pending the suit, which seeks to condemn the very property so long in use under the agreement referred to, the Telegraph Company seeks to enjoin the Railroad Company from cutting, removing, or interfering with any part of the Telegraph Company's plant until the result of the condemnation suit shall be ascertained. If that suit shall result in a judgment for the Telegraph Company for the condemnation of the land it desires to take, then its own poles and other apparatus and structures will be ready for use just as they are now, provided reasonable compensation shall have been paid. For the purposes of the pending motion, we think we must assume that any just compensation due the Railroad Company will be ascertained and paid within a reasonable time. We say this because the condemnation action has been brought, and is now being actively prosecuted, and there is nothing in the law of Kentucky which forbids the result indicated. On the contrary, the law of the state expressly authorizes this public utility corporation to do exactly what it seeks to do in that suit. So, assuming that the complainant will acquire a right to the property it seeks to condemn, what will be the situation? If the Railroad Company is permitted in the meantime to remove the complainant's plant from the very ground which may be condemned, the Telegraph Company will be compelled

at vast expense to restore it after condemnation shall have taken place; whereas if, pending that suit, the plant is permitted to remain where it is, the Railroad Company will be awarded just compensation for any of its property which may be taken, including probably reasonable compensation for its use pendente lite, and in the meantime the defendant Railroad Company will derive great benefit from the presence of the Telegraph Company's plant on its right of way, for the reason that, in the absence of that plant, there would be serious if not insurmountable difficulties in operating the railroad, as it is obvious that the defendant could not in any short period construct a telegraph plant of its own. So that any removal or destruction of complainant's plant, so far as it is located on defendant's right of way in Kentucky, would be wanton and unnecessary, besides inflicting a damage that would be irreparable because there would be nobody who could well be compelled to make the loss good. There would, it seems to us, be neither justice nor reason in visiting upon complainant a loss of that character.

The suggestion that the defendant may want to devote the very part of its property which complainant seeks to condemn to the construction in the future of a telephone and telegraph line of its own was disposed of in an opinion recently delivered in the condemnation suit, where the defendant, in its answer, made a similar claim under section 1 of the Kentucky act authorizing condemnations by telegraph companies. While for other reasons overruling a demurrer to a paragraph of the answer which, among other things, set up this claim, the court said that in doing so it by no means intended to intimate that it yielded to "the defendant's contention that the defendant has the first right to choose what part of its right of way shall be taken by the plaintiff or a right to any preference in respect to what it may itself intend hereafter to use for its own telegraph or telephone lines. Our view rather is that no such right or preference exists. The last clause of section 1 of the act does not seem to confer any rights upon the defendant as to a nonexisting telegraph line. The peculiar conditions actually existing in this instance greatly emphasize the view we take. Indeed, there would seem to be no justice in allowing the defendant to exclude the plaintiff from keeping its own poles where they now are when the right of way it has had, and which it desires to hold, shall be fully paid for through this action. The party seeking to condemn appears to be given the right to take what it 'desires,' though this, of course, is subject to the other provisions of the act. That is the object of the suit. The statute does not require that its right to take shall be made subordinate to any purpose of the owner. The important thing is giving the owner compensation for what in fact is taken. The taking of one particular part of a thing may involve greater compensation including greater damages, but it does not otherwise affect or control the right to take what the plaintiff desires."

At all events, in the peculiar conditions surrounding this case, if this court may be permitted to exercise any discretion, it will be exerted in the direction of maintaining the present status until the con-

demnation·suit shall be finally disposed of.   Indeed, this seems to us
to be the course dictated alike by common sense and a proper judgment.

What we have so far said applies specifically to that part of com-
plainant's plant which is located in Kentucky.

## 2. As to Property Outside of Kentucky.

[2] The second of the propositions to be investigated is more dif-
ficult, and has been the subject of anxious consideration.   In order to
its solution, we must remember exactly what the general nature of
the entire litigation is.   Of course, the nature and object of the con-
demnation suit itself is obvious enough.   This, the equity suit, is, to
some extent, what may be called an adjunct to the other.   While,
however, the condemnation suit is necessarily limited to property actu-
ally located in the state of Kentucky, that property nevertheless is of
a peculiar and exceptional nature.   The complainant's plant and tele-·
graph system largely depends for its value to those who put their
capital into it, and for its efficiency in meeting the proper demands
upon it by the public upon its consolidation into one whole.   Divided
into fragments and treated and operated separately as such, its value
and efficiency would be greatly impaired.   In considering the ques-
tions involved, we should not lose sight of these facts.   If, while con-
demning property for its uses in Kentucky, the integrity of its plant
as one entire and composite thing should be destroyed by the defend-
ant in respect to those parts of the entire plant which, in fact, are
located in other states, certainly very great and possibly irreparable
injury might result to the complainant, not only elsewhere, but here,
without any compensation or other benefit to the defendant.   If, under
existing conditions, the defendant should, in fact, exercise a right
which it might suppose it had and sever continuous wires and thus
cut off the use by the complainant of its property on defendant's rights
of way at each state line of the many over which its right of way
crosses, much unnecessary injury might ensue to complainant.   If
we were asked merely to aid courts in other states by an injunction
here which might operate in terms upon property located there, and
which is there sought to be condemned by complainant, we should
decline the request, first, because it might be intrusive as well as be-
yond our power, and, second, because we must assume that those courts
can protect themselves and their own jurisdiction.   The matter before
us, however, appears to have a much broader significance when we
consider that we are asked to protect a unified property and plant
·extending through several states, including Kentucky, from dismem-
berment into fragments in any of them while the condemnation suit
is being fought out here.   We conceive that any great and useful
end to be achieved by any injunction we may issue in this case must
be· founded upon principles strikingly analogous to those announced
by the Supreme Court in Muller v. Dows, 94 U. S. 448, 449, 450, 24
L. Ed. 207, where the grounds were vigorously stated for holding that
a court of the United States in one district might, in enforcing a sin-
gle mortgage upon a line of railroad extending through several states,
decree a sale of the entire property, regardless of state lines.   The

disastrous results from selling one entire property in fragments were clearly pointed out. Without further elaboration or special mention of the various authorities read, we have reached the conclusion that we may apply similar or kindred considerations to those suggested in Muller v. Dows to the advantageous settlement of the questions now under consideration. True, as urged by the learned counsel for the defendant, we should not enjoin here the mere commission of a trespass upon real property in another state. If we had before us a simple proposition of that character, we should yield to that view readily enough. But the complainant's plant, whether real estate or not, is one entire thing, though it extends beyond Kentucky, and we have scriptural warrant for the conclusion that, if we cut off one part, the whole body suffers. It is upon grounds suggested by that most important fact that we may protect the one body of the complainant by enjoining here certain injuries to it elsewhere, and especially when we know that such injuries wherever committed will inevitably injure the plant in this state where we are certainly authorized to protect it.

While the complainant is a citizen of New York, the defendant is a citizen of Kentucky fully before the court, and subject to its power, and may be acted upon by its orders and processes. Any injunctive order in the premises would operate personally upon the defendant in this district and not upon its property elsewhere. We cannot doubt, having in view the extraordinary nature of this case, the peculiar character of the property involved and all the circumstances of the entire situation, that it is proper to grant complainant's motion. We are all the more willing to do this because we are satisfied that the defendant itself will be well nigh as much benefited by the injunction as will be the complainant. Indeed, it is difficult to see how either side could get along without it if active and hostile litigation should continue.

We shall, therefore, upon the grounds indicated, grant the motion to the full extent prayed for, and very earnestly suggest that the parties consent that the order to be entered shall contain certain other clauses similar to those agreed upon and embraced in the temporary restraining order now in force. In doing these things we think we exercise a wise discretion and reduce the disadvantages to the defendant to the minimum. We repeat that we think there will be none which will not to a large extent be counterbalanced by advantages to it.

We suppose this may be a case where, as a condition to the issuing of a temporary injunction, a bond should be required of the complainant to cover any damages that may result. The penalty of such bond may be the subject of consideration and settlement at this time if the defendant thinks a bond is necessary.

A proper decree may be prepared.

### On Motion to Dissolve the Temporary Injunction.

On December 28, 1912, the court delivered its opinion in writing, in which it stated some, at least, of its reasons for granting a temporary injunction pendente lite, as prayed for in the bill of complaint.

Speaking generally, and without confining ourselves to what was said in the written opinion then delivered, the injunction was granted upon several grounds, among which were the following, namely: First, that the complainant had the right under the law of Kentucky, which was supreme in that connection, to condemn, pursuant to the provisions of section 4679a of the Kentucky Statutes, what was desired by it for its uses of the property of the defendant described in the petition in the action at law mentioned in the bill of complaint, using the word "desired" in its statutory sense, when taken in connection with the other provisions of section 4679a; second, that as the action at law was pending and, as the court knew, was being prosecuted with diligence, it would be discreet and proper to enjoin the threatened destruction or seizure by the defendant of any part of the existing telegraph system of the complainant; third, that this preventive measure was addressed only to the defendant, which was within the jurisdiction of the court, although it prevented that defendant from doing any of the threatened acts at any point where the line of the complainant was located on the right of way of the defendant; fourth, that as the complainant's system was one unified thing, extending as one whole through many of the states, and as its severance into fragments at any state line might greatly and irreparably injure the whole system in the several states, it was thought proper, under principles analogous to those expressed by the Supreme Court in Muller v. Dows, 94 U. S. 448, 24 L. Ed. 207, to enjoin the defendant, as was done on December 28, 1912; fifth, that both parties were greatly dependent upon the maintenance of the telegraph lines as now existing, and could hardly do without them, though the defendant was seeking an advantage by carrying into effect a purpose to seize or take exclusive possession of the lines on its right of way under a claim of title thereto arising out of the contention that a failure to remove the telegraph lines when the contract terminated had operated to transfer all of the complainant's property on the defendant's right of way to the defendant; and, sixth, that the situation was such that both parties to the controversy would be greatly injured if the injunction were refused, though neither party apparently could be hurt if it were granted, especially as the temporary injunction determined no right of either side, but only preserved the existing status until the question of right could be definitely disposed of.

On January 4th the defendant filed its answer in most elaborate, not to say argumentative, form, and thereupon moved the court to dissolve the temporary injunction. This motion was supported by further affidavits. The complainant, on January 10th, filed its replication, and thereby put the case at issue. We by no means hold that the motion to dissolve may not be admissible, notwithstanding the replication, although usually, after the replication has been filed, whereby the issues of fact are made up and the case ready for preparation for trial on the merits, the testimony must be taken upon notice which gives opportunity to cross-examine the witnesses. We did not pass upon the question at all, but on January 23d heard the motion to dissolve the temporary injunction upon the case as made by the bill and the answer there-

to and the affidavits read. Voluminous as the papers have become, we remain satisfied with the action of the court in granting the temporary injunction. With brevity we will state our reasons therefor.

[3] We by no means think that section 3964 of the Revised Statutes of the United States in any way interferes with, or was by Congress intended to interfere with, the right of the state to authorize telegraph companies to condemn the property sought to be condemned in this instance. Only a small part of the right of way of the defendant is involved. There is no pretense, and there could be none, that such part of the property of the defendant as is sought to be condemned here would prevent the Railroad Company from operating its railroad and carrying the mails over it while so operating it. We all know that such a result would not and could not come, because we know that the telegraph lines, precisely where they now are, have existed and have been operated for over 26 years, and that the presence of those lines at this point have greatly aided, rather than hindered, the safe and expeditious carriage of the mails. There is every reason, therefore, for believing that its presence will continue to aid in that way.

If we were right in supposing that the temporary injunction should be granted upon the reasons stated, or any others that might exist, we think the situation in the several states as now further developed indicates no reason for dissolving it. Surely it should not be dissolved as it applies to the lines in Kentucky, or Tennessee, or Georgia, or any other of the Southern states. As to Indiana and Illinois, the details of the situation *as to condemnation there* (we emphasize that phrase) are peculiar and somewhat curious, but it may at no distant day be changed by appellate proceedings. Besides, the telegraph system of the complainant, the severing or destruction of which is enjoined, extends from Kentucky over into Indiana, and through that state into Illinois, over which it passes into Missouri. The severance, pendente lite, of this unified system at any point would injure complainant's property in Kentucky, and, indeed, everywhere else where that system extends. As it appears to be manifest that the injunction can do no harm, but rather that it will do good to the Railroad Company, there does not seem to be any ground for dissolving the injunction on account of the condition of things in respect to condemnation in Indiana and Illinois. The complainant owns the telegraph system through those states, and, while those states must decide as to the right of *condemnation,* we see no reason why the complainant's property should be injured by the defendant pending the settlement of the matter.

[4] It was urged that the situation respecting certain railroads outside of Kentucky, which are operated by the defendant under leases from other railroad companies, should operate in favor of the pending motion. The lessor railroads are not parties to this suit, nor are they enjoined. The defendant is the party enjoined, and as it is in possession of the railroads it has leased, and as it alone operates those railroad lines, there is every reason, which has any potency, for enjoining it, as it is in a situation to do the threatened damage if any one is. The defendant controls the situation in respect to those leased roads, and the defendant is within the jurisdiction and control of this court.

[5] Some insistence was made upon the alleged fact that the complainant was incurring obligations for rentals of the telegraph lines. This was upon the theory that the ownership of the lines had been forfeited to the defendant by reason of the failure of the complainant to remove its property at the expiration of the previous contract between the parties. But we think that is a matter entirely foreign to the question before us, and is not ripe for consideration or determination at this time. It may be the subject of consideration at the trial of the condemnation proceeding, where it may be that the question of rental would constitute one of those which should be taken into account when ascertaining the value of the property; but this question would necessarily relate back to the time of the beginning of the condemnation suit. We think that it is out of place in this connection.

We have reached the conclusion that the motion to dissolve the temporary injunction should be denied and overruled, and an order accordingly may be prepared and entered.