COUNTY OF DODGE ET AL. V. THOMAS R. ACOM ET AL.[*]

FILED FEBRUARY 20, 1901.   No. 11,707.

1. **Drainage Ditch:** JURISDICTION OF COUNTY BOARD:   COMPLIANCE
   WITH STATUTORY PROVISIONS.   Where, in proceedings under the
   provisions of article 1, chapter 89, Compiled Statutes, 1899, for
   the establishment of a drainage ditch, a county board acquires
   jurisdiction over the subject-matter under consideration, any
   mere irregularity or want of exact compliance with all of the
   statutory provisions will be deemed insufficient to render void
   the whole proceedings taken regarding such matters.

2. ———: ———: SPECIAL ASSESSMENT.   In establishing a drainage
   ditch and levying special assessments for benefits received the
   jurisdictional steps required to be observed are, first, a peti-
   tion signed by one or more owners of land to be affected by
   the proposed ditch; second, a proper bond for costs, as pro-
   vided by statute, to be approved by the clerk; third, a finding
   by the board on actual view that the proposed improvement
   is necessary, and will be conducive to the health, convenience
   or welfare of the public; fourth, that the proposed ditch is the
   best route for the contemplated improvement; and fifth, that
   notice, as provided by statute, to persons on whose lands the
   cost is to be apportioned, and the owners whose lands are to
   be taken or damaged, shall be given.

3. **Assessment:** IRREGULARITY: NON-COMPLIANCE.   The provisions of
   section 28, to the effect that assessments shall not be set aside
   in consequence of any error or irregularity committed or ap-
   pearing in any of the proceedings, must be given the force and
   effect fairly justified by the language used when applied to
   errors, irregularities or non-compliance with the strict letter
   of every provision of the statute not going to the question of
   jurisdiction.

4. **Appointment of Engineer:** FINAL SURVEY:   REPORT:   VARIANCE
   FROM PETITION.   Where an engineer is appointed by the board,
   after it has found the route designated to be the best, the
   improvement necessary, and conducive to the public health,
   convenience and welfare, who goes upon the line of the ditch
   petitioned for, makes a final survey, sets grade stakes, notes
   intersections, and makes a profile and plat, fixes the dimen-
   sions and slopes of the banks, etc., and his report is confirmed
   by the board, the action taken will be deemed to be that of
   the board and in compliance with the statute.   The fact that
   the line as finally established varies from that described in the
   petition, but for a less distance than is allowed by the petition
   and by statute, does not affect the validity of such proceedings.

[*]Rehearing allowed.

5. **Petition**: COMPLIANCE WITH STATUTE. A petition which describes with certainty the point of beginning of a drainage ditch and the direction in which the same is to run, giving the sections through which it passes, and the place where terminating, and providing that the line may vary from a straight line to avoid improvements and take advantage of the ground, but not more than 160 rods, is a sufficient compliance with the provisions of the statute to give the board jurisdiction to act in respect to the same.

6. **Actual View**: ADJOURNMENT: ACTION OF BOARD INTERIM. Where the record shows that a county board adjourned its sitting at the court house, and went in a body to view the proposed ditch and that they made such view, and afterwards resumed their sitting, such act is a compliance with the statute, and the view made will be regarded as the act of the board and not of individuals.

7. **Engineer**: COMPLIANCE WITH STATUTE. Where the engineer divided the proposed ditch into working stations, and showed in each the distance, and the number of cubic feet to be removed, together with the cost of removal, at the estimate upon which the total cost is arrived at, this, with the report of the assessment to be levied on each parcel or tract of land for special benefits, imparts all the information that would be necessary in case of an apportionment of the number of lineal feet and cubic yards to each lot or tract of land according to the benefits which will result to each from the improvement, and is a sufficient compliance with the provisions of the statute in that respect.

8. **Irregularity**: HARMLESS ERROR. An irregularity in not apportioning and reporting the number of lineal feet and cubic yards to each lot or tract of land according to benefits, *held*, harmless error, since the parties complaining made no effort to bid on the work of construction.

9. **Special Benefits**: MARKET VALUE. In determining special benefits accruing to land by reason of the construction of a drainage ditch, it is proper to take into consideration whatever will come to the land from the drain to make it more valuable for tillage, or more desirable as a place of residence, or more valuable in the general market, the true and final test being what will be the influence of the proposed improvement on the market value of the property.

10. **Evidence**: FINDING. Evidence examined, and *held* to support the finding and order of the county board levying special assessments for benefits received by reason of the construction of a drainage ditch.

11. **Jurisdiction**: PRESUMPTION. Where a county board has acquired jurisdiction to act, the presumption is in favor of the correct-

ness and regularity of the proceedings taken, and its action should not be overturned except when it is made to affirmatively appear that the action taken is erroneous.

12. **Findings of Board:** ADMINISTRATIVE POWER. The findings of the county board as to the necessity of a proposed drainage ditch, and that the public health, convenience or welfare will be promoted thereby, can not thereafter be made the subject of a controversy as to whether correct and well founded or not. It is the exercise of a delegated power, political or administrative in character, and not judicial, conferred upon the county board by the sovereign authority of the state acting through its legislative branch of government.

13. **Constitution.** The provisions of section 6, article 9, of the constitution, that "the legislature may vest the corporate authorities of cities, towns and villages, with power to make local improvements by special assessment, or by special taxation of property benefited," do not prohibit the legislature from conferring the power to make local improvements by special assessments or taxation of property benefited upon counties. *Darst v. Griffin,* 31 Nebr., 668, followed.

14. **Statute.** The provisions of the statute under consideration *held* not to be violative of any of the provisions of sections 3, 13, 21, and 24 of article 1 of the constitution.

ERROR from the district court for Dodge county. Tried below before GRIMISON, J. *Reversed.*

*Grant G. Martin, Clark C. McNish, Frank Dolezal* and *Robert J. Stinson,* for plaintiffs in error.

*E. F. Gray* and *George L. Loomis, contra.*

HOLCOMB, J.

Under the provisions of article 1, chapter 89, Compiled Statutes, 1899, an act to provide for draining marsh or swamp lands, proceedings were instituted before the county board of Dodge county for the purpose of securing the establishment and construction of a drainage ditch in that county. After the presentation of a petition for the purpose mentioned action was taken resulting in the establishment and construction of the ditch prayed for, and the levying of special assessments upon many different tracts of land adjacent to the proposed ditch for

special benefits received by reason of such construction. From the order finding that the various properties were benefited by reason of the improvement, and levying a special tax therefor, ninety-eight different owners of such properties, by error proceeding, obtained a review of the action of the county board in the district court, which, upon a hearing, resulted in annulling, reversing and vacating the order of the county board levying the special assessment, and holding such proceedings to be null and void. The grounds upon which the trial court reached the conclusion announced in its judgment are not made clear from the record, the findings being only of a general character and to the effect "that there is error in said proceedings and final order or judgment of said board, and in said subsequent proceedings and orders of said board, and that said proceedings and final order of judgment of said board complained of in said petition in error are erroneous and void and should be vacated." And thereupon it was adjudged "that said proceedings * * * be and hereby are reversed, set aside, vacated and declared and adjudged to be void so far as the same in any manner affects the plaintiffs in error herein, and that the special tax assessed and levied by said board by its order entered on its journal under date of November 3, 1899, assessing the lands of each of the plaintiffs in error herein, to which their petition in error relates, for the cost and expense of the location and construction of the ditch mentioned in said petition and transcripts, known as the 'Central Cut Off Ditch,' and the entry of such tax upon the tax lists of said county in pursuance of said orders, be and hereby are vacated and set aside, and declared and adjudged to be void." From the judgment of reversal the case is upon error brought to this court for its consideration. Many questions are presented and argued by counsel upon both sides, directed to the validity and regularity, or want thereof, of the proceedings had before the county board relating to the judgment or order of which complaint is made. It is perhaps

well enough that we should consider the different ques-
tions presented and necessary to a proper disposition of
the case in what appears to us the logical order of their
presentation, rather than to follow the briefs of counsel
upon either side.

At the outset it is proper to apply the principle hereto-
fore adopted by this court, and which obtains quite gen-
erally, to the effect that jurisdiction having been once
acquired by the county board in regard to and over the
matters under consideration, any mere irregularity or
want of exact compliance with all of the statutory pro-
visions will be deemed insufficient to render void the
whole proceedings by or under which the special taxes
objected to were levied. *Darst v. Griffin*, 31 Nebr., 668.
The jurisdictional steps required to be observed under
different decisions of this court are declared to be, first,
a petition signed by one or more owners of land to be
affected by the proposed ditch; second, a proper bond
for costs, as provided by statute, to be approved by the
clerk; third, a finding by the board on actual view that
the proposed improvement is necessary and will be con-
ducive to the health, convenience or welfare of the public;
fourth, that the proposed ditch is the best route for the
contemplated improvement; and fifth, that notice, as pro-
vided by statute, to persons on whose land the cost is to
be apportioned and the owners whose lands are to be
taken or damaged shall be given. *County of Dakota v.
Cheney*, 22 Nebr., 437; *State v. Colfax County*, 51 Nebr., 28.
An observance of the different jurisdictional steps re-
quired by statute will give to the board jurisdiction to act
regarding the subject matter, and when jurisdiction has
attached, the further proceedings, and the establishment,
construction and completion of the proposed improve-
ment, can be regarded as voidable only, and not void,
even though irregularity is shown. By section 28 of said
chapter 89 it is provided that "the collection of assess-
ments to be levied to pay for the location or construction
of any ditch shall not be enjoined nor declared void; nor

shall said assessment be set aside in consequence of any error or irregularity committed or appearing in any of the proceedings provided by this act," etc.   These provisions, while not applying to void assessments, must be given the force and effect fairly justified by the language used, when applied to errors, irregularities or non compliance with the strict letter of every provision of the statute, not going to the question of the jurisdiction of the board regarding the matter upon which they are acting.   *Morris v. Merrell*, 44 Nebr., 423.

In the light of the observations just made, we now proceed to a consideration of the objections urged against the validity of the action of the county board in making the assessment complained of.   A petition signed by several owners of lands to be benefited by the proposed ditch was filed with the county clerk, praying the county board to cause, in the manner provided by law, to be located, constructed and established, a ditch or drain on the following described lands in Dodge county, Nebraska, to-wit, "commencing at the ¼ corner on the north of section 19 (township 18, range 6 east, and running southeast [describing the sections through which it proceeded], and terminating in the Platte river about forty rods east of the west line of section 17, township 17, range 7 E.   The final location shall be made by a competent engineer and may vary a little from a straight line to avoid improvements and take advantage of the ground, but not more than 160 rods from said straight line at any point in the route.   Said ditch to be of such dimensions and with such slope of bank as may be designated by the engineer who may make the survey for said ditch," it being represented that it would be conducive to the public health, convenience and welfare to have said ditch and drain established as therein proposed, that the lands to be affected by said ditch or drain were low, wet and unfit for cultivation on account of the want of ditch and drainage facilities.   Acting on this petition, the county board, by motion, proceeded to view the line of the proposed im-

provement, and after actual view, and after reciting the prior action taken, determined and found with respect thereto as follows: "We find that said petition is signed by one or more of the owners of lots and lands which will be benefited by the construction of said proposed ditch and drain; and whereas, we find that a good and sufficient bond has been filed and approved by the county clerk, as by law provided; and whereas, we find from actual view of the line and route of said proposed ditch and drain, as prayed for, and the premises along and in the vicinity thereof, that said ditch and drain as prayed for in said petition is a necessary improvement, and that the construction of the same will be conducive to the public health, convenience and welfare, and that the line proposed and designated in said petition is the best route for said ditch and drain; Therefore be it resolved, that this report and resolution be adopted, and that the clerk be and is hereby ordered to enter the same on the journal of this board." After the action recited had been taken by proper order, one J. W. Andrews, a civil engineer, was directed to go upon the line, survey and level the same, set a stake every 100 feet, note the intersections and make a report, profile and plat of the same. Upon this report it appears that a variation of the route described in the petition was made by constructing the ditch from the starting point due south 140 rods, and then in a straight line to the terminus mentioned in the petition.

It is urged that the action of the board as to the location and establishment of the ditch was not a sufficient compliance with the statute. We think differently. Counsel argue upon the theory that every act necessary to the establishment and construction of the ditch must be taken by the board, and none other, and that no authority existed for the engineer to make the exact and final location and provide for the dimensions thereof. To follow this contention to its logical conclusion would lead to tl result that the board must itself construct as well as establish the ditch, and that no authority existed for

others to perform the necessary work to accomplish that end. The line was located with sufficient certainty when the board approved and adopted the route as defined in the petition, and the variation of the engineer from that route was not so great that it can be said that another route had been decided upon; and was within the language of the petition as well as the statute, which permits a variance of this character. By section 7, upon favorable action by the board on such petition, it is provided that an order shall be entered on the journal of the board, directing the county surveyor or engineer to go upon the line described in said petition and survey and level the same, and make a report, profile and plat of the same, and estimate the number of cubic yards for each working section as hereinafter provided. The orders of the board appear to be in strict compliance with the provisions of this section. The petition itself provided for the determination of the dimensions by a survey of the proposed route, and this was followed. While it is provided by section 6 that the county board has power to change and establish a new route, and determine the dimensions of the proposed improvement, this provision, even if applicable, does not preclude them from employing assistance as may be required in determining the dimensions, and adopting as their own a report made under such an arrangement by those competent to act thereon. We find no valid objection, either to the petition or the steps afterwards taken thereunder, by which the route of the proposed improvement was finally and definitely established by the engineer, or to his report of the dimensions and necessary excavations to construct the proposed ditch. There was, as it appears to us, a full and substantial compliance with the letter and spirit of the statute in this respect, and the proceedings must be regarded as regular. To give to each separate provision of the statute a literal construction, and require precise and exact compliance therewith, would defeat the very object of its creation and render its observance

utterly impossible. The petition for the proposed ditch described with certainty and definiteness the point of beginning, the direction it was to run, which was in a straight line, the sections through which it was to pass and the place where it was to terminate on the banks of the Platte river; that it might vary a little from a straight line to avoid improvements and to take advantage of the ground, but not more than 160 rods from said straight line at any point of the route. This description was and is a sufficient compliance with the statute, and to give the board jurisdiction to act in respect to the same. *Clark v. Teller*, 50 Mich., 618; *Kinnie v. Bare*, 36 N. W. Rep. [Mich.], 672.

Some objection is offered because the record discloses that the county board adjourned from their sitting in the county court house to go in a body and view the proposed improvement, which by the record it is shown was done, the contention being that the view as made was by the members as individuals and not as a board. The objection is without merit. The view was made, in full compliance with the requirements of section 5 of the statute, by the board in a body, making an actual view of the line of the proposed ditch. It is not required that the record should show that they were in session while viewing the proposed route.

Complaint is made because of the report of the engineer, together with his plat and estimate, failing to show an apportionment of the number of lineal feet and cubic yards to each lot or tract of land, according to the benefits which will result to each from the improvement, according to the provisions of section 8. This at most is only an irregularity, and does not go to any of the jurisdictional steps required to be followed. It is urged that the policy of the law is that each person against whom special assessments are levied may have the right to cancel the obligation by engaging in the work of construction. As the cost of removing the earth from the ditch is only a part of the total cost, it at once presents itself as an im-

possibility to permit each land owner whose lands are benefited to work out the special assessment against him by engaging in the work of excavation of the proposed ditch. Substantial compliance, however, was made in dividing the ditch into working stations, and showing in each the distance and number of cubic feet required to be removed in that working station, together with the cost of such removal at the estimate upon which the total cost is arrived at. This, with the assessments levied on each parcel or tract of land, imparted all the information that would be derived had the engineer followed with exactness the provisions of the section of the statute under consideration. All persons, by this means, have an equal opportunity, if desired, to engage in the work of construction and liquidate the special assessment levied against the property, so far as the same may be done, until the whole of the work of excavation is provided for. But even if irregular, it was harmless error, because the record discloses that none of the parties complaining bid, or apparently desired to bid, for any of the work upon advertisement and invitation for bids therefor. No right of any of the exceptors was prejudiced by the action of the engineer complained of.

It is strongly argued that the order finding the lands of those objecting specially benefited and levying a special assessment therefor is erroneous and not supported by sufficient evidence. It is contended that the lands being located west of the proposed ditch and at a higher level, the natural drainage being towards the ditch and then east, rendered the proposed improvement of no benefit to them. This involves a question difficult of discussion, unless the opinion is extended to an unwarranted length, which we are not at liberty to undertake. The land is located in the Platte valley, as the expression is occasionally heard, in the Platte river bottoms. Its general character with reference to its surface is that of flat, level, prairie land, the natural drainage is to the east over the surface, and through a tortuous stream, in

29

which, according to the testimony of the engineer, it is sometimes necessary to place a buoy or float in order to determine whether there is a current and its direction. There are depressions, swales and low places, upon which water accumulates and slowly drains off the land or is evaporated. Drainage ditches have been found advisable and advantageous in reclaiming the land, better adapting it to agriculture, and conducing to the public health and convenience. The water from the surrounding land is collected therein more rapidly, and it furnishes a better method of conducting the excess water into the Platte river, which finally receives all the waters running off the earth's surface in that locality. Just the extent of the benefits accruing to the lands some distance from the proposed ditch is, of course, involved in some uncertainty. The finding and report of the engineer, under the provisions of the statute, should, we think, when adopted by the board, be regarded as *prima facie* evidence of the benefits found to accrue to each tract of land, to be overcome in contest only by competent testimony showing the contrary. This question, it would seem, must be determined largely from the conformation of the surface of the ground where the land is located, in connection with and relation to the proposed drainage ditch. It will not do to say that because the natural drainage or average fall of surface of five or six feet to the mile to the east, over which surface water will in time or eventually find its way to the river, other and more expeditious methods of drainage may not be adopted, and thereby specially benefit the lands adjacent because of the adoption of such methods. The object sought is to carry the surface water off the lands, and thus more suitably adapt them to agriculture, and promote the public health and convenience. If lands immediately adjacent to the proposed improvement are benefited by the ditch · and the drainage of the water therefrom is accelerated, then for the same reasons would lands further off, and yet within an area subject to the influence and affected by

the improvement, be benefited by permitting the water thereon to be more rapidly collected, drained into the ditch and carried from the locality. Many causes, it is shown, contribute to this result, such as road ditches, lateral drains and other means by which the surplus waters are conducted into the drainage ditch and then carried directly to the river by the most direct route. The necessity of a resort to artificial methods of drainage appears to arise from the flat, level condition of the surface with low places where the surface waters gather, the fact that the natural water courses or drains are tortuous and meandering, and of higher banks than the surrounding lands, and the currents more or less impeded by grasses and other growths of vegetation obstructing the free flow of the water therein. While there is complaint generally of the action taken by the board, the efforts of the objectors are directed principally to the object and for the purpose of showing that, as to them, no special benefits accrued to their property, and the tax thereon levied is, therefore, wrongful and erroneous. In speaking of benefits received by the lands taxed, to which objections are made, the engineer who examined and reported the special benefits accruing to the lands to the board, and who was a witness, says that the ditch will furnish a number one outlet for all the water on the land or that might come on it. "I don't believe," says he, "I know of any land that is covered here by the assessment but what the water that would fall on it would ultimately reach the ditch, * * * and to my knowledge there is not a foot of ground but what the surface water will get into the ditch." This evidence, and other of a similar character, is convincing and not refuted. In speaking on the subject of benefits it is said by the supreme court in *Lipes v. Hand*, 1 N.E.Rep. [Ind.],874: "The conclusion to which the authorities lead is that benefits are special when they increase the value of the land, relieve it from a burden, or make it especially adapted to a purpose which enhances its value," citing 3 Sutherland, Damages [1st ed.],

454-462; *Allen v. Charlestown,* 109 Mass., 243; *Whitney v. Boston,* 98 Mass., 312; *Farwell v. Cambridge,* 11 Gray, 413; *Milwaukee, etc., v. Eble,* 4 Chand., 72. And in *Culbertson v. Knight,* 52 N. E. Rep., 700, says the same court in considering the objects of statutes similar to those now under consideration, "Public health, public convenience, and public utility are fundamental considerations; and these, with all other subjects that affect the value of land, must be counted upon by the viewers in determining the question of benefits. A rule that has received high sanction is stated thus: 'The only safe and practical course—the one which will do equal justice to all parties—is to consider what will be the influence of the proposed improvement on the market value of the property.' *In re William and Anthony Sts.,* 19 Wend., 678; Cooley, Taxation, 660; *State v. Mayor, etc., of City of Newark,* 35 N. J. Law, 166; *Lipes v. Hand,* 104 Ind., 503, 1 N. E., 871, and 4 N. E., 160. Whatever will come to the land from the drain, to make it more valuable for tillage, or more desirable as a place of residence, or more valuable in the general market, should be reckoned as benefits, and these questions arise without reference to whether the drain actually reaches the land and receives the water directly from it." Applying the rules above stated, which are based on reasoning sound in principle and quite applicable to the case at bar, the evidence, we think, gives substantial support to, and a sufficient basis for, the findings and order of the county board which are complained of.

The objectors all uniting in prosecuting error proceeding from the action taken by the county board, and the case having been presented and tried upon the theory that the law and the evidence applied to all the several tracts of land alike, we have considered the case as argued by counsel in the same manner, the question thus being reduced to the one proposition of whether any of the lands assessed, to which exception is taken, comes within the rule of special benefits as heretofore discussed. We think it does, and find no reason from the record for

any other conclusion than that all the separate tracts of lands of the ninety-eight parties objecting to the special assessments were properly and justly assessed under the provisions of the statute under consideration. By section 8 it is made the duty of the engineer, under the direction of the board, to return a schedule of all lots, lands, etc., that will be benefited by the proposed improvement, whether the same are abutting on the line of the proposed improvement or not. And by section 11 the county board, upon finding that due notice of the hearing has been given, shall examine the report of the engineer and the apportionment made by him, and if it is in all respects fair and just according to benefits, they shall approve and confirm the same; but if they find said apportionment to be unfair and unjust, they shall so order and so amend it as to make it fair and just according to benefits. After a full hearing and the production of much evidence, the action of the engineer in the case at bar was confirmed, and the board having acquired jurisdiction to act, as in other proceedings of this character, the presumption is in favor of the correctness and regularity of such proceedings, and should not be overturned except when it is made to affirmatively appear that the action taken is erroneous. *Little v. Sinnett*, 7 Ia., 324, 334; *Chicago, B. & Q. R. Co. v. Chamberlain*, 84 Ill., 333.

In the hearing of the case before the county board the objectors sought to raise an issue as to the correctness of the finding of the board, as one of the jurisdictional steps, that the route proposed was the best route, and that the improvement was conducive to public health, convenience or welfare. Evidence offered for this purpose was excluded, and we think rightly so. This was a matter upon which an issue to be judicially determined could not be formed. The power is conferred upon the board by the legislature to cause to be constructed a work of improvement of the kind contemplated, when the same is necessary for the purposes intended and will be conducive to the public health, convenience or welfare. The

exercise of this power is not judicial. The finding and conclusions of the board, to whom the legislature has given authority to act in the manner prescribed, are final and conclusive as to the necessity of the proposed ditch, and that the public health, convenience or welfare will be promoted thereby, and can not thereafter be made the subject of a controversy as to whether correct and well founded or not. It is the exercise of a delegated power, political or administrative in character, conferred upon the county board by the sovereign authority of the state acting through its legislative branch of government. *Lynch v. Forbes*, 161 Mass., 302; *In re Cooper, Mayor*, 28 Hun [N. Y.], 515, 524; *Chicago, R. I. & P. R. Co. v. Lake*, 71 Ill., 333, 336; *Barrett v. Kemp*, 91 Ia., 296.

The foregoing construction of section 1 of the statute under consideration does not render it violative of the provisions of the constitution as to due process of law, the administration of justice, the taking of private property without just compensation, or the right of appeal, as contained in sections 3, 13, 21 and 24 of article 1 of the constitution, since all rights guaranteed by these provisions are safeguarded by other sections of the same statute, the right to be heard, the judicial determination to be had, the compensation to be given and the right of appeal apply not to the conclusions of the board as to the necessity for the improvements, but to action taken which affects the property rights of the parties to the proceedings in the exercise of the right of eminent domain, and for which provisions are made in other sections, for notice, a hearing and determination, compensation or special benefits accruing, and the right of review or appeal by those dissatisfied with the result of such hearing and the determination thereof. This is all the constitution requires. As to the main and fundamental questions involved, the constitutionality of this statute has been, after mature deliberation, affirmed in a well considered opinion, which must be regarded as decisive of the question, and we are not disposed to enter into a re-

examination thereof now. *Darst v. Griffin, supra.* The objectors have had their statutory notice, they have appeared before the board and entered a remonstrance against its findings and exceptions to the levying of special assessments for benefits found to exist. From these findings they have been accorded a right to a review and hearing thereof in the district court, so that it can not be said that any question is involved as to a hearing, determination and adjudication of the subject before their property rights are affected by the special assessments complained of.

From an examination of the entire record, we are convinced that the county board obtained jurisdiction over the subject-matter regarding which they have taken action, and that the order made as against the remonstrators and exceptors is supported by the evidence and warranted by law. The order of the county board complained of being in accordance with law and valid, and there appearing no sufficient ground for reversal or vacation thereof, the judgment of the district court must be reversed and vacated, and the order of the county board reinstated, which is accordingly done.

JUDGMENT ACCORDINGLY.