Western Union Tel. Co. *v.* Louisville & N. R. Co.

[65 South. 650.]

1. Eminent Domain. *Statutory proceedings. Compliance. Construction of statutes. Code 1906, section 1006.*

In eminent domain proceedings every essential prerequisite to the jurisdiction called for by the statute must be strictly complied with, and this must affirmatively appear on the face of the proceeding, in order to give them validity, but a strict compliance with the statute does not necessarily mean a literal and exact compliance. A substantial compliance will suffice.

2. Eminent Domain. *Statutory proceeding. Compliance.*

   Under Code 1906, section 1856, providing that the application to condemn land under the right of eminent domain, shall be presented to the clerk of the circuit court of the county, who shall indorse thereon his appointment of a competent justice of the peace of the county to constitute, with a jury, a special court of eminent domain, the essential requirements is that the justice of the peace shall be appointed in writing and the indorsement thereof upon the application is a mere detail to provide for the more effectual preservation of the evidence of the appointment, and failure to do so is a mere irregularity, not reviewable in a suit in equity to restrain the taking of the property awarded in the proceedings.

3. Eminent Domain. *Statutory proceedings. Construction of statute.*

   A deputy circuit court clerk may appoint a justice of the peace to constitute, with a jury, a special court of eminent domain, as provided by section 1856, Code 1906, since under the power conferred by Code 1906, section 1006, a deputy clerk is authorized to perform all the acts and duties which their principals may lawfully do, and this includes acts done under special authority.

4. Eminent Domain. *Right to exercise. Telegraph companies.*

   While the act of congress passed July 24, 1866 (Act July 24, 1966, chapter 230, 14 Stat. 221), contains no provision conferring upon telegraph companies the right to obtain by eminent domain proceeding a right of way along the line of a railroad company, yet the state has the power to confer such right and section 929, Code 1906, conferring the right of eminent domain upon telegraph companies is a valid exercise of such power.

5. Eminent Domain. *Judgment. Suit in equity.*

   A suit by a railroad company to restrain a telegraph company which has condemned a right of way for a telegraph line from taking possession of the right of way or erecting wires thereon is not maintainable on the theory that the telegraph company may not, under the judgment, take any part of the right of way to maintain an existing line, and should the telegraph company seek to use the judgment for an existing, instead of a new line, its right to do so may then be determined in a proceeding brought for that purpose.

6. Appeal and Error. *Rendering final judgment.*

   The court on appeal from an order refusing to dissolve a temporary injunction for want of equity on the face of the bill, cannot on reversing the order dismiss the bill because the only final judg-

ment which the supreme court can render on reversal is such
as should have been rendered in the court below, and such court
on motion to dissolve was without authority to dismiss the bill.

Appeal from the chancery court of Jackson county.

Hon. J. M. Stevens, Chancellor.

Suit by the Louisville & Nashville Railroad Company
against the Western Union Telegraph Company. From
an order denying a motion to dissolve an injunction,
defeandant appeals.

The facts are fully stated in the opinion of the court.

*Harris & Potter,* for appellant.

The sole purpose of this bill is to have the judgments
of the eminent domain court declared void for the rea-
sons set forth in said bill, and does not raise any ques-
tion of fact, and therefore this court will determine
whether, as a matter of law, the complainant is entitled
to an injunction in this proceeding, the sole purpose of
the proceeding being to exclude the telegraph company
entirely from any use of the right of way by perpetual
injunction.

We will now consider the objections to the judgment,
set up in the bill in the order in which we have presented
them. First, as to the failure of the clerk to endorse his
appointment of the justice of the peace upon the appli-
cation. It will be borne in mind that it is shown by the
bill that the appointment of the justice of the peace was
made in writing and filed with the application. In order
to fully appreciate the force of this objection, it would
be well to consider the statute, chapter 43, of the Code
of 1906, under which the proceedings were instituted,
and the purposes for which the eminent domain court
is constituted and the scope of its power and authority.
It is perfectly manifest from the most casual reading
of the statute that it was the purpose of the legislature
to divest the proceedings as far as possible of all mere
technical and formal matters relating to the procedure.

*Vinegar Bend Lumber Co.* v. *Oak Grove, etc., Railroad Co.,* 89 Miss. 84.

Even in eminent domain, statutes which are not expressly to be liberally construed in matters of form and procedure, as our statute, is, it is held that a substantial compliance with the statute is all that is required. See Lewis on Eminent Domain (3d Ed.), 1077; 24 Wendell, 367; 45 Hun, 310.

Second, the second objection to the proceedings, is equally without merit. It is urged that the letter of the statute required the application to be presented to the clerk of the circuit court of the county, and that the clerk shall issue the writ, etc., and because in two of the cases the writs, etc., being issued by the deputy clerks, were void and vitiated the whole proceeding. Section 1006, Code of 1906, provides for the appointment of deputy clerks in the supreme, chancery and circuit courts, "who shall take the oath of office, and who shall, thereupon, have the power to do and perform all of the acts and duties which their principals may do and perform."

Third, the third point is that the telegraph company did not have the power or authority to condemn the railroad right of way because it was property already devoted to the public use. We submit that the right of the telegraph company to condemn the rights of way of railroad companies in the state of Mississippi is conclusively settled in the case of *Cumberland Tel. & Tel. Co.* v. *Y. & M. V. R. R. Co.,* 90 Miss. 686, in which case this question was most elaborately considered.

Fourth, it is claimed that the judgments are void and should be cancelled as a cloud on complainants' title because the statutes of this state only authorize telegraph companies to exercise the power of eminent domain for the purpose of constructing new lines, and that in fact it is not the purpose of telegraph company to construct new lines as alleged in its applications, and

authorized by the judgments, but to attempt to maintain existing lines.

By what process of reasoning the complainant arrives at the conclusion that judgments are void because the telegraph company might undertake to do something which was not authorized by these judgments, we must confess we are unable to understand. The validity of the judgment is one thing. What the telegraph company might undertake to do under that judgment is quite another thing. In the case of *M. & O. R. R. Co.* v. *Postal Tel. Co.,* 76 *Miss.* 731, this court held, at pages 752 and 753, that these stipulations contained in the application were valid and enforceable.

By the chapter on Eminent Domain, section 1872, the Code of 1906, the whole record is required to be filed in the office of the clerk of the circuit court and remain there as a record thereof, and as such subject to be filed by any person interested and recorded in the records of the deeds of the county. In other words, the application together with all of the proceedings, down to and including the judgment, constitutes the title of the party condemning, and is the charter of its rights, defining and limiting them, and it is to this the court must look in determining whether the judgments rendered are valid or invalid, and not to any mere allegation in the bill as to what might be done by the telegraph company. In other words, in determining the question here as to whether or not the judgment is or is not void, the court must look to the proceedings themselves which were made parts of the bill, and these proceedings as set forth must control. This is a universal rule of law. See 16 Cyc. 237; 8 Ency. Pl. & Pr., p. 741, note 1; *Frieberg* v. *Magold,* 70 Tex. 116; 1 Beach on Equity Proceedings & Practice, 229; 31 Miss. 63; 64 Ill. App. 239; 30 Ill. App. 17; 97 Md. 725; 40 W. Va. 553; 122 Fed. 363.

What the telegraph company might want to do under the judgment, and what it is authorized by law to do,

are entirely different things and depend upon different considerations. The court must look to the applications and to the judgments which were rendered, to determine the validity of the judgments and cannot consider the conjectures of the complainants as to what might·be done by the telegraph company in violation of the right conferred by the judgments.·

In considering the matter of anticipating or taking into consideration by way of anticipation, in the condemnation proceedings, the suggestion that the telegraph company might act in violation of law, or the rights conferred by the judgments or in violation of the stipulations upon which the condemnation proceedings are had, we direct the court's attention to the following cases, which will be found instructive: *Mobile & Ohio R. R. Co.* v. *Postal Tel. Co.,* 76 Miss. 739; *Texas Railroad Co.* v. *S. W. Tel. Co.,* 77 S. W. 321; *Postal Tel. Co.* v. *Oregon Railroad Co.,* 23 Utah, 474; *Mobile & Ohio R. Co.* v. *Postal Tel. Co.,* 120 Ala. 21; *Mobile & Ohio R. Co.* v. *Postal Tel. Co.,* 101 Tenn. 62; *Atlantic Railroad Co.* v. *Postal Tel. Co.,* 120 Ga. 269-280; *St. Louis R. R. Co.* v. *Postal Tel. Co.,* 173 Ill. 508; *Postal Tel. Co.* v. *Louisiana Western R. Co.,* 49 La. App. 1270; *Chicago R. Co.* v. *Chicago,* 166 U. S. 226; *Georgia R. Co.* v. *Postal Tel. Co.,* 152 Fed. 991; *Davis* v. *Y. & M. V. R. Co.,* 73 Miss. 678. The purpose of citing these cases and the rule from Cyc., is to make it clear that in condemnation cases the presumption is, that those things alone will be done which are lawful to be done and permissible under the applications and judgments rendered, and the proceedings cannot be delayed or thwarted by conjectures or suggestions that the condemning party will act in an illegal manner, will not act in accordance with the terms of the judgment or the stipulations contained in the application.·

Redress for all of these matters is ample should the occasion arise. The rules which we have set forth are

of universal application and if these matters cannot be considered in a condemnation proceeding, certainly the court would not hold the judgment void because the landowner suggested that the plaintiff, in the condemnation proceeding, would not abide by its terms. This, as we have said before, is not a bill to enjoin a threatened injury to the plaintiff arising from the doing of an unlawful act. In other words, it is not in the nature of a bill *qui timet.*

It is settled in this state that equity will not relieve if the "injury complained of is doubtful, eventual or contingent." *Green* v. *Lake,* 54 Miss. 564. "It is not enough to show probable or contingent injury, but it must be shown to be inevitable and undoubted." Campbell, J., in *McCutchen* v. *Blanton,* 59 Miss. 122. See, also, High on Injunctions (4th Ed.), secs. 22 to 34, inclusive. *Id.,* sec. 832.

Fifth and sixth, it is claimed in the bill that the judgments are void: (a) Because to enforce them against complainant would be violative of the commerce clause of the Constitution of the United States, and would deprive complainant of its property without due process of law; because complainant has a right under its charter to erect telegraph lines and to operate the same; and because, before the institution of the condemnation proceedings, its right of way was and is devoted to the public use by complainant for the purpose of construction and maintenance thereon, should the necessity therefor arise, of a telegraph line; and because it has accepted the provisions of the Act of Congress approved July 24, 1866, entitled "An act to aid in the construction of telegraph lines, and to secure to the Government the use of the same for postal, military, and other purposes"; and, because, at the expiration of the contract with the Western Union, it, the complainant, contemplates operating a line over its right of way in Mississippi, and that the maintenance by the telegraph company of the telegraph

line over the right of way in Mississippi would interfere with the use of said right of way by the complainant. (b) And because the complainant, the railroad company, is a military and post road within the meaning and intent of the Act of Congress of date June 15, 1866, and the Act of Congress of date June 8, 1872, and that in passing the Act of July 24, 1866, which Act is set out in full in the bill beginning at page 19 of the transcript, the Congress dealt with the subject of the use of military and post roads by telegraph companies, and thereby took exclusive control of the subject, and excluded the legislatures of the several states, including the legislature of this state, from any right to legislate in regard thereto, and therefore, section 929 of the Code of 1906, which attempts to confer upon telegraph companies the right of eminent domain, is, in so far as it purports to confer upon the telegraph companies the right to condemn rights of way on military and post roads, operates as an illegal interference with the right of Congress to regulate interstate commerce and the instruments thereof, and that said section 929 operates to impose a burden upon interstate commerce and the instruments thereof in contravention of sub-section 3, section 8, article 1, of the Constitution of the United States.

In regard to the first contention of the complainant (a), that is to say, that it contemplates the erection and maintenance of a telegraph line upon its right of way as above set forth; it is manifest that this contention is in the teeth of the decisions of the United States in reference to this subject, construing and interpreting the purpose and effect of the Act of Congress of July 24, 1866, in that, to grant this contention would be to hold that the railroad company could, because it contemplates building a telegraph line upon its right of way and has accepted the provisions of the Act of 1866, exclude all other telegraph companies from its right of way, and thereby create a monopoly.

The supreme court of the United States has decided that a railroad company cannot grant the exclusive right to one telegraph company to construct, operate, and maintain a telegraph line on its right of way. It certainly could not have the right itself if it could not grant that to another telegraph company. *United States* v. *Union Pacific Railway Co.,* 160 U. S. 1, 40 Ed. 319, at page 333; *Pensacola Tel. Co.* v. *Western Union Tel. Co.,* 96 U. S. 1, 11 (24 L. Ed. 708, 711).

The supreme court of the United States has gone further in the case of *Pensacola Tel. Co.* v. *Western Union Tel. Co.,* 96 U. S. 1, 24 L. Ed. 708, and there held that an act of the legislature of Florida, in so far as it undertook to confer exclusive rights upon a telegraph company, was inoperative as against a corporation of another state which had accepted the conditions of the Act of Congress of July 24, 1866; and the supreme court of the state of Mississippi, in the case of *Mobile & Ohio Railroad Co.* v. *Postal Tel. Company,* 76 Miss. 731, held that a railroad company may "construct a telegraph line along its right of way, or permit another to do so, but it acquires, and can confer no exclusive right to do so"; citing *Western Union Tel. Co.* v. *Baltimore & Ohio R. Co.,* 19 Fed. 660; *Western Union Tel. Co.* v. *B. & O. S. W. R. Co.,* 11 Fed. 1; *Western Union Tel. Co.* v. *American Union Tel. Co.,* 38 Am. Rep. 781; *Pensacola Tel. Co.* v. *Western Union Tel. Co.,* 96 U. S. 1; 24 L. Ed. 708.

Our purpose in calling attention to these cases is to show that so far from the Act of Congress of July 24, 1866, giving a railroad company or telegraph company which had accepted that act, the right to exclude other telegraph companies, its purpose was to prevent this very thing and to prevent monopolies, or the hampering or trammelling of interstate commerce by the granting of exclusive rights to particular telegraph companies, either by the state or by railroad companies. *Western Union Tel. Co.* v. *Penna. R. Co.,* 195 U. S. 540, 549, ——

L. Ed. 312, 332; *Western Union Tel. Co.* v. *Penna. R. Co.*, 195 U. S. 540, 49 L. Ed. 312; *Western Union Tel. Co.* v. *Penna. R. Co.*, 195 U. S. 595, 49 L. Ed. 332; *Pensacola Tel. Co.* v. *W. U. Tel. Co.*, 96 U. S. 1, 24 L. Ed. 708; *Western Union Tel. Co.* v. *Ann Arbor R. Co.*, 198 U. S. 239, 44 Ed. 1052; *United States* v. *Union Pacific R. Co.*, 160 U. S. 1, —— L. Ed. 319.

The right to condemn railroad rights of way has been upheld in numerous Federal cases. *Postal Tel. Co.* v. *Oregon, etc.*, —— Fed. 190; *Georgia R. & Banking Co.* v. *Tel. Co.*, 152 Fed. 991; *Western Union Tel. Co.* v. *L. & N. Railroad Co.*, 201 Fed. 946.

It is settled too well to require the citation of authorities, that telegraph business is interstate commerce. Telegraph companies are placed by Federal statutes under the jurisdiction of the Interstate Commerce Commission, and from common experience we must know that the construction of telegraph lines upon railroad rights of way, is in aid of commerce.

*Gregory L. Smith,* for appellee.

In two instances, the application for the eminent domain proceedings were presented to deputy clerks, and not to the clerk of the circuit court, and in each instance, appointments of the justice of the peace were made by separate writing, and not by endorsement upon the application. Under the laws of Mississippi, the justice of the peace, in an eminent domain proceeding, acts ministerially, and the whole proceedings are special and statutory. *Sullivan* v. *Y. & M. R. R. Co.*, 85 Miss. 649, 38 So. 33. In such proceedings, all of the material requirements of the statute must be literally complied with, and such compliance must appear on the face of the record. *White* v. *Memphis B. & A. R. Co.*, 64 Miss. 566, 1 So. 730; *Madden v. Louisville, N. O. & T. R. R. Co.*, 66 Miss. 258, 6 So. 181; 15 Cyc. Law & Procedure, 812; Lewis on Eminent Domain, sec. 403, 406. In the case of

*White* v. *Memphis B. & A. R. R. Co.*, 1 So. 730, the proceedings were under a charter, but were similar to the proceedings prescribed by chapter 43 of the Code of Mississippi, and speaking of such proceedings the court said: The remedy is summary in derogation of the common law, and is wholly governed by the statute. In such cases the material requisite of the statute must be complied with, and compliance must appear on the face of the record. As stated above, one of the contentions is that these eminent domain judgments are each void because the appointment of the justice was not made by endorsement upon the application. Section 1856, of the Code of Mississippi requires the petition or application for condemnation to be presented to the clerk of the court, and requires him to endorse thereon the appointment of a competent justice of the peace to constitute, with a jury, a special court of eminent domain, and to fix the time and place in the county for the organization thereof.

The statute requires that the appointment shall be by endorsement upon the petition, and not otherwise, and the selection of a justice of the peace and the fixing of a day for the organization of the court, are both matters requiring the exercise of judgment and discretion.

The bill of complaint shows that in neither instance was there any appointment of the justice by endorsement upon the application, and as the statute does not authorize any other method of appointment, nor the evidencing thereof in any other way, the proceeding which does not show upon its face, such an appointment by such an endorsement upon the application, fails to show on the face of the record compliance with this material requisite of the statute.

The record which the statute requires to be made in a particular way—by endorsement upon the application— fails to show any appointment of the justice of the peace, and the bill affirmatively alleges that the appointment

was not made in the only way in which such an appointment was authorized—by endorsement upon the application.

Defendant admits that eminent domain statutes must, as a rule, be strictly construed, but contends that the form of the statute of Mississippi evidences a disposition to treat the matter more liberally, and that proceedings in Mississippi, unlike the proceedings in other states, should be more liberally construed. This contention is in direct conflict with the law as enunciated in *White* v. *Memphis B. & A. R. R. Co.,* 64 Miss. 566, 1 So. 730, and is not consistent with the frame of the statute. The statute definitely fixes the steps to be taken, and their exact forms including the exact forms in which verdict shall be rendered and the judgment entered. Under the laws of Mississippi, the deputy clerks cannot exercise the authority vested in the clerks to order the institution of eminent domain proceedings.

Section 1006 of the Code of Mississippi (which is a part of chapter 27) provides: That the clerk of the supreme court, of the circuit court and of the chancery court shall have power, with the approbation of the court, or the judges in vacation, to appoint one or more deputies, who shall take the oath of office, and who thereupon shall have uower to do and perform all the acts or duties which their principals may lawfully do.

The acts which the deputies are authorized by this section to do are acts relating to the performance of the duties of the clerk of the court *virtuti officio,* and does not include other acts to be done under special authority conferred upon the clerks by statute.

Section 1000 (which is also a part of chapter 27 of the Code) provides as follows: Each court shall have control over all proceedings in the clerk's office of such court during the preceding vacation, and may correct any errors or mistakes therein, and may set aside any of said proceedings, and may make such order therein as may

be just and proper; and may, for good cause shown, reinstate any case discontinued during said vacation; and shall also have power to arrange the business therein in a convenient manner, and to establish, from time to time, rules and orders for the conducting of suits and proceedings and respecting all matters to be done in term time, or in vacation not repugnant to law.''

Under section 1856 (which is part of the eminent domain chapter) the clerk is required to fix a time for organizing the court of eminent domain and if the provisions of chapter 27 of the Code were applicable to the duties of the clerk performed under the eminent domain chapter, the circuit judge could, under section 1000, change the time fixed by the clerk for organizing the eminent domain court, or should the clerk fail to fix such time, the judge would have the authority to do so, and yet the supreme court of Mississippi has clearly held that the judge has no such power.

In *Sullivan* v. *Y. & M. V. R. R. Co.*, 85 Miss. 649, 38 So. 33, the supreme court, reviewing an order of mandamus issued by the circuit court, wherein it had directed the eminent domain court to proceed upon a day fixed by the circuit court, said: ''The clerk of the circuit court is directed by law to fix a time at which, and the place where, the court of eminent domain is to meet and to summons eighteen men from whom the jury is to be selected. We do not think the circuit judge had power to fix the time or place in his order for the reconvening of the eminent domain court, or to direct the justice of the peace to have other competent parties summoned as jurors.''

That section 1006 of the Code of Mississippi only applies to the acts of the clerks *virtuti officio,* see: *Muller* v. *Boggs,* 25 Cal. 175; *Harrison* v. *Harwood,* 31 Texas 650; *State* v. *New Jersey,* 25 N. J. Law 309. Again, the act of a clerk in appointing a justice of the peace as a constituent part of an eminent domain court is neces-

sarily judicial in its nature.  He is required to make the appointment of a competent justice, and must necessarily determine whether the justice is or is not competent; he is required to make the appointment when the allegations of the application show that the applicant has the right to condemn, and he should not do so if the application fails to show that the applicant has the right to condemn.  This results from the fact that unless the application shows the right to condemn, the clerk has no power to appoint a justice of the peace, or to make any other order, and any proceeding under such application is a nullity.  *Cumberland Tel. & Tel. Co.* v. *Yazoo & M. V. R. R. Co.*, 90 Miss. 648, 44 So. 156.  A deputy cannot perform a duty imposed upon his principal which involves the exercise of discretion and judgment.  23 Am. & Eng. Ency. Law, 365-6; 1 Am. & Eng. Ency. Law, 975; 11 Cyc. 397; 29 Cyc. 1, 433; Mechem on Public Officers, 567.

In the case of the *Railroad Company* v. *Heister*, 8 Penn. State, 445, 482, a statute provided that in inquisition proceedings to determine the value of land taken by a railroad, the court of sessions should, on application of the owner, "issue a precept to the sheriff, commanding him to summons twenty disinterested freeholders" to ascertain what damage had been sustained and that twelve of the jurors should be impanelled and sworn by the sheriff, or his deputy, to estimate the value of the land, the sheriff, instead of summoning the jurors from the county at large, summoned them from a list prepared by his deputy.  The court said: "In the two cases of *McClure* v. *Doctor Riley*, exception is taken to the manner of selecting and summoning the jurors.  Although I am perfectly satisfied of the integrity of the transaction, yet I am convinced that the sheriff has proceeded in a mistaken view of his public duty.  The sheriff is commanded to summons twenty discreet and disinterested freeholders from the body of the county, and not from a

list prepared by another, although that other may be the deputy sheriff." *McMaster* v. *Carrothers,* 1 Penn. State 324.

In *Summer* v. *Roberts,* 31 N. C. 527, it was held that a deputy clerk could not certify the probate of a will, the act being considered judicial in its nature. In *Carlisle* v. *Carlisle,* 2 Harr. 318 (Delaware), the court said: "Whenever the legislature has, by statute, conferred upon a ministerial officer, such as the prothonotary, a power requiring the exercise of judgment and sound discretion for the protection of interest which are manifestly from the face of the statute, the subject of legislative solicitude, he cannot delegate the trust to another, but must faithfully discharge it himself. If he delegates the power to another, to be exercised in his absence, the interest intended to be protected by the act cannot be affected by the exercise of such power."

It is submitted, therefore, that the order made by the deputy clerk of the circuit courts were unauthorized and void, and did not justify the organization, by the justices of the peace appointed by him, of eminent domain proceedings. Section 929 of the Code of Mississippi, granting to telegraph companies a right to condemn railroad rights of way, when applied to post roads, interferes with the regulation of interstate commerce. by congress and is, for that reason, void.

The amendment of June 18, 1910, of the Interstate Commerce Act (1 Sup. Fed. Stat. 1912, p. 111), makes both complainant and defendant instruments of interstate commerce and subject to the regulations of Congress. *Mondou* v. *N. Y., N. H. & H. R. R. Co.,* ————— —————————; *Southern Ry.* v. *United States,* 22 U. S. 21; *Northern Pac. Ry.* v. *Washington,* 22 U. S. 371. The bill of complaint shows that complainant's railroad is a post road, and as such, as well as because it is an instrument of interstate commerce, Congress has the right to regulate it (*Pensacola Tel. Co.* v. *Western Union Tel. Co.,*

96 U. S. 1), and when regulated in any respect by Congress that regulation is, in that respect, exclusive. *Missouri Pac. Ry.* v. *Larabee Mills,* 211 U. S. 621; *Southern Ry.* v. *Reid,* 222 U. S. 437.

An act to aid the construction of telegraph lines and to secure to the government the use of the same for postal, military and other purposes: "Be it enacted by the senate and house of representatives of the United States of America in congress assembled, that any telegraph company now organized, of any state in this Union, shall have the right to construct, maintain and operate lines of telegraph through and over any portion of the public domain of the United States, and along any of the military or post roads of the United States, which have been, or may hereafter be, declared such by act of Congress, and over, under or across the navigable streams or waters of the United States. Provided: That such lines of telegraph shall be so constructed and maintained as not to obstruct the navigation of such streams and waters, or interfere with the ordinary travel on such military or post roads (railroads). And any of such companies shall have the right to take and use from such public lands the necessary stone, timber and other materials for its posts, piers, stations and other needful uses in the construction, maintenance and operation of said lines of telegraph, and may preempt and use such portion of the unoccupied public lands subject to preemption through which its said lines of telegraph may be located as may be necessary for its station, not exceeding forty acres for each station; but such station shall not be within fifteen miles of each other. Section 2, "And be it further enacted, that telegraph communication between the several departments of the Government of the United States and their officers and agents shall, in their transmission over the lines of any of said companies, have priority over all other business, and shall be sent at rates to be annually fixed by the post-

master-general. Section 3, "And be it further enacted, that the rights and privileges hereby granted shall not be transferred by any company acting under this act to any other corporation, association, or person; Provided, however, that the United States may at any time after expiration of five years from the date of the passage of this act, for postal, military or other purposes, purchase all the telegraph lines, property and effects of any or all of said companies at an appraised value, to be ascertained by five competent disinterested persons, two of whom shall be selected by the postmaster-general of the United States, two by the company interested, and one by the four so previously selected. Section 4, "And be it further enacted, that before any telegraph company shall exercise any of the powers or privileges conferred by this act, such company shall file their written acceptances with the postmaster-general, of the restrictions and obligations required by this act." .

By this act Congress undertook to deal with the subject of the use of post roads by telegraph companies and prescribed the terms and conditions upon which they should be used. Construing this act, the supreme court of the United States has held that it only granted to telegraph companies the right to use the rights of way of post roads when the consent of such roads, to such, was obtained. *Western Union* v. *Penna. R. Co.,* 195 U. S. 540.

This act, therefore, authorizes telegraph companies to use the rights of way of post roads upon condition: (1) That they obtain the consent of the railroads to such use; (2) That such lines of telegraph shall be so constructed and maintained as to not obstruct the navigation of such streams and waters, or interfere with the ordinary travel on such military or post roads; (3) That telegraph communications between the several departments of the governments of the United States, and their officers and agents, shall, in their transmission over the lines of any

interstate companies, have priority over all other business, and shall be sent at rates to be annually fixed by the postmaster-general; (4) That the rights and privileges hereby granted shall not be transferred by any company acting under this act, to another corporation, association or person; (5) That the United States may, at any time after the expiration of five years from the date of the passage of said act, for postal, military or other purposes, purchase all the telegraph lines, property and effects of any and all of said companies at an appraised value to be ascertained by five competent disinterested appraisers, two of whom shall be selected by the postmaster-general of the United States, two by the company, and one by the four so previously selected; (6) That before any telegraph company shall use such post roads, such company shall file its written acceptance with the postmaster-general of the restrictions and obligations required by this act.

By this act, Congress clearly occupied the field of legislation upon this subject, and under the authorities quoted above, its control of that subject became exclusive. The laws of Mississippi not only undertakes to regulate the same subject but are in direct conflict with the Act of Congress. They undertake to authorize telegraph companies to use the rights of way of railroads without the railroads' consent, although Congress has expressly provided that they shall do so only with the consent of such railroads.

The state law undertakes to authorize telegraph companies to use such rights of way without accepting the condition that Congress has required them to accept before using the same. The state undertakes to discharge telegraph companies using post roads, from the duty of giving priority to telegraphic communications between the several departments of the government of the United States, and their officers and agents, and to discharge them of the obligation to send such telegrams at rates to be annually fixed by the postmaster-general.

The state law undertakes to discharge the telegraph companies of the obligation to sell its lines to the United States. In short, the state law undertakes to annul and destroy the entire purpose of the Act of Congress, and is necessarily in conflict with the Act of Congress, and therefore void.

Smith, C. J., delivered the opinion of the court.

Appellant owns and operates a telegraph line extending along the right of way of appellee's railroad. This telegraph line is maintained by appellant by virtue of a contract entered into by it and appellee. This contract being about to expire, appellant instituted three separate eminent domain proceedings, one in Jackson county, one in Harrison county, and one in Hancock county, for the purpose of condemning a right of way for a new line to be erected along appellee's railroad in these counties.

Pursuant to the petitions instituted therefor, these eminent domain courts assembled, and judgments were rendered fixing the amount of compensation to be paid by appellant to appellee for the use of its right of way. From these judgments no appeal was taken by either party. Some time after these judgments were rendered, and before the expiration of the contract under which appellant was operating its telegraph line along appellee's right of way, appellee filed the bill herein, praying that appellant be restrained during the pendency of this suit —"from entering upon or using, otherwise than under the existing contract between the complainant and the defendant, any portion of complainant's said right of way or bridges, hereinabove described, for the purpose of erecting, continuing, or maintaining its telegraph poles, wires, and other appliances and from attaching its poles, wires, or other parts of its line to complainant's bridges or any part of them, until this cause is finally heard and determined; . . . that at the hearing of this cause, this honorable court will be pleased to decree

that the several judgments of condemnation for the use, by the Western. Union Telegraph Company of parts of the right of way of complainant, for the erection by the said Western Union Telegraph Company of its poles, wires, and appliances, and of the right to attach its poles, wires, and other parts of its line to complainant's bridges or any part of them, to be clouds upon the title of complainant's right of way, for the several reasons assigned in the foregoing bill of complaint, and that this honorable court will be pleased to decree said several condemnation proceedings, and the said several judgments rendered therein, to be void and of no effect, and that it will permanently enjoin the said Western Union Telegraph Company from entering upon, taking possession of, or erecting any of its wires or other appliances upon complainant's bridges or to any of them after the termination, by notice or otherwise, of the contract under which it now occupies said right of way with its telegraph line.''

On the filing of this bill a temporary injunction was granted, and thereafter a motion was filed by appellant to—

''dissolve the injunction heretofore granted in this cause against it,-for want of equity on the face of the bill.''

This motion was by the chancellor overruled, and from the decree so ordering an appeal was granted to this court to settle the principles of the case.

Section 1856 of the Code provides that the application to exercise the right of eminent domain—

''shall be presented to the clerk of the circuit court of the county, who shall indorse thereon his appointment of a competent justice of the peace of the county in which the property, or some part thereof, is situated to constitute, with a jury, the special court of eminent domain.''

In two of these eminent domain proceedings the appointments of the justices of the peace were not indorsed upon the application, but were made in writing upon

separate sheets of paper and filed with the papers in the cause. This fact, appellee claims, renders these judgments void, because, in the language of its counsel: .

"All of the material requirements of the statute must be literally complied with, and such compliance must appear on the face of the record."

The rule as thus announced is not strictly accurate.

"Every essential prerequisite to the jurisdiction called for by the statute must be strictly complied with, and this must affirmatively appear on the face of the proceedings, in order to give them validity." 15 Cyc. 812; *White* v. *Railroad Co.,* 64 Miss. 566, 1 So. 730. But "a strict compliance with the statute does not necessarily mean a literal and exact compliance. A substantial compliance will suffice." 1 Lewis's Eminent Domain (3d Ed.), sec. 387; *White* v. *Railroad Co.,* 64 Miss. 566, 1 So. 730; *Darrow* v. *Railroad Co.,* 169 Ind. 99, 81 N. E. 1081; *Nickerson* v. *Lynch,* 135 Mo. 481, 37 S. W. 128; *Charleston* v. *Comstock,* 36 W. Va. 263, 15 S. E. 69; *Dodge County* v. *Acom,* 61 Neb. 376, 85 N. W. 292.

The essential requirement of the statute is that the justice of the peace shall be appointed in writing, and the indorsement thereof upon the application is a mere detail to provide for the more effectual preservation of the evidence of the appointment. The indorsement of the appointment of the justice of the peace on the application is not essential to the jurisdiction conferred by the appointment, and a failure of the clerk to indorse the appointment thereon is a mere irregularity, not open to review in this proceeding.

In two of these counties the applications were filed with deputy circuit clerks, who thereupon discharged the duties relative thereto imposed upon the circuit clerks. Section 1006 of the Code provides:

"The clerk of the supreme court, of the circuit court, and of the chancery court shall have power, with the approbation of the court, or of the judges in vacation,

to appoint one or more deputies, who shall take the oath of office, and who thereupon shall have power to. do and perform all the acts and duties which their principals may lawfully do.''

It is argued, however, by counsel. for appellee that:

''The acts which the deputies are authorized by this section to do are acts relating to the performance of the duties of the clerk of the court *virtuti officio,* and does not include other acts to be done under special authority conferred upon the clerks by statute.''

This contention was settled adversely to appellee in ·*McRaven* v. *McGuire,* 9 Smedes & M., 34, and *McCraven's Heirs* v. *Doe ex dem. McGuire,* 23 Miss. 100.

Another reason advanced by counsel for appellee in support of the decree rendered in the court below is that:

''Section 929 of the Code of Mississippi, granting to telegraph companies a right to condemn railroad rights of way, when applied to post roads, interferes with the regulation of interstate commerce by Congress and is, for that reason, void.''

The right of appellant to erect and maintain its telegraph line along appellee's railroad is not derived primarily from section 929 of the Code of Mississippi, but from an act of Congress passed on July 24, 1866 (Act July 24, 1866, ch. 230, 14 Stat. 221), entitled ''An act to aid in the construction of telegraph lines, and to secure to the goverment the use of the same for postal, military, and other purposes,'' which provides:

''That any telegraph company now organized, or which may hereafter be organized under the laws of any state in this Union, shall have the right to construct, maintain, and operate lines of telegraph through and over any portion of the public domain of the United States, over and along any of the military or post roads of the United States which have been or may hereafter be declared such by act of Congress, and over, under, or across the navigable'' streams or waters of the United States.

This statute contains no provision conferring upon telegraph companies the right to obtain by eminent domain proceedings a right of way along the line of a railroad company, and it is argued by counsel for appellee that it is beyond the power of the state to confer any such right upon them. This point seems not to have been decided by the supreme court of the United States, but in *Western Union Telegraph Co.* v. *Pennsylvania Railroad Co.,* 195 U. S. 574, 25 Sup. Ct. 142, 49 L. Ed. 312, 1 Ann. Cas. 517, the court, in holding that the telegraph company had no right under this statute to appropriate any portion of the railroad company's right of way without its consent, referred to the fact that "it is admitted that the statutes of New Jersey (the state in which the litigation arose) do not confer the right of eminent domain upon the telegraph company." The power of a state, however, to confer such a right upon telegraph companies to be exercised by them in making effective the right conferred upon them by the act of Congress here in question has been upheld in several cases decided in Federal, district and circuit courts. *Postal Telegraph & Cable Co.* v. *Southern Railroad Co.* (C. C.), 89 Fed. 190; *Postal Telegraph & Cable Co.* v. *Cleveland, etc., R. R. Co.* (C. C.), 94 Fed. 234; *Postal Telegraph & Cable Co.* v. *Oregon, etc., R. R. Co.* (C. C.), 104 Fed. 623; *Postal Telegraph & Cable Co.* v. *Oregon, etc., R. R. Co.* (C. C.), 114 Fed. 787; *Georgia R. R. Co.* v. *Telegraph Co.* (C. C.), 152 Fed. 991; *Western Union Telegraph Co.* v. *L. & N. R. R. Co.* (D. C.), 201 Fed. 946.

Several of these cases were reviewed in *Western Union Telegraph Company* v. *Pennsylvania Railroad Compay, supra,* at page 570 of 195 U. S., at page 141 of 25 Sup. Ct., at page 323 of 49 Law Ed., at page 524 of 1 Ann. Cas., and the court pointed out that while the opinions rendered contained language supporting the contention that the right of eminent domain was conferred by the act of Congress in question, that in each of the cases

the right was exercised by virtue of the statutes of the state in which the case arose.

We are of the opinion that the state has the power to confer the right of eminent domain here called in question, and that section 929 of the Code is valid.

But it is said that the bill alleges that it is the intention of appellant to maintain its existing telegraph line, and not to erect a new one, and therefore the injunction should be continued for that reason alone; for, conceding that the eminent domain judgments are valid, appellant has no right under the statute to condemn any portion of appellee's right of way for the purpose of maintaining an existing line, but only for the purpose of erecting a new line. We do not understand the bill to be framed on any such theory. As we understand the bill, one of the reasons assigned for holding the eminent domain judgments void is that appellee's purpose in obtaining them was to maintain an existing, instead of erecting a new, line. Conceding that appellee's purpose in obtaining these judgments was as stated, that fact will not render the judgments void. Should appellant seek to use them as a means for maintaining an existing, instead of a new, line, its right so to do can then be determined in a proper proceeding instituted for that purpose.

We are requested by counsel for appellant to dismiss the bill in event the decree of the court below is reversed, for the reason that no question of fact is to be determined; the sole ground of the motion to dissolve being the want of equity on the face of the bill. This we cannot do, because the only final judgment which this court can render when a judgment is reversed is such as should have been rendered in the court below, and the court below on the motion to dissolve was without authority to dismiss the bill.

The decree of the court below will be reversed, the motion to dissolve the injunction will be sustained, and the cause remanded.

*Reversed and remanded.*