IN RE DRAINAGE DISTRICT NUMBER 100 OF GRANT COUNTY,
NEBRASKA, A PUBLIC CORPORATION. DOROTHY A. PETERSEN
ET AL., APPELLEES, V. MAMIE A. THURSTON ET AL.,
APPELLANTS.
62 N. W. 2d 68

Filed January 8, 1954. No. 33363.

(833)

*Charles A. Fisher*, for appellants.

*Gantz & Williams* and *Quigley & Heth*, for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action instituted under the provisions of Chapter 31, article 3, R. R. S. 1943, for the organization of a drainage district. The lands described in the articles of association and application to form the district are situated in Grant County and Cherry County, Nebraska. The larger portion of the lands are in Grant County, hence as required by statute the articles were filed in that county. § 31-302, R. R. S. 1943.

The provisions of the statute were complied with as to the filing of the articles and the issuance and service of process. Six landowners having ownership of 611.5 acres which it is alleged would be benefited by the organization of the district signed the articles and application. These lands were of course included in the proposed district. Also included in the proposed district were 174 acres of land belonging to Mamie A. Thurston and Clyde Thurston. The Thurstons did not sign the

articles but filed objections to the organization. They were designated as objectors and the signers of the application were designated as petitioners.

A trial was had on the application and the objections thereto, at the conclusion of which the objections were overruled, the proposed drainage district was declared organized as a public corporation, and it was adjudicated that all of the real estate described in the application was properly in the district and would be benefited. The designated name of the district was Drainage District Number 100 of Grant County, Nebraska.

From this adjudication Mamie A. Thurston and Clyde Thurston have appealed. They will be referred to hereinafter as appellants. The designated appellees are the owners of the 611.5 acres of land in the district not owned by the appellants. They will be referred to hereinafter as appellees.

At the outset of the consideration of this appeal it is to be observed that the proceeding for the establishment of a drainage district as a corporate body such as the one under consideration is purely statutory and is governed by four sections of the statute, namely, sections 31-301 to 31-304, inclusive, R. R. S. 1943.

It is to be further observed that under the statute objectors may object to the organization only on the ground that their land will not be benefited by drainage, and should not be embraced in the drainage district. § 31-304, R. R. S. 1943.

It is also to be observed that before a district may be organized it must be made to appear that there are 160 acres or more in a contiguous body of swamp or overflowed lands which will be reclaimed and protected from the effects of water by drainage or otherwise. § 31-301, R. R. S. 1943.

Again in case the court shall find that a portion of the land described in the application will not be benefited by the district such portion may be excluded and the remainder declared a district provided the remainder

contains 160 acres or more of land. § 31-304, R. R. S. 1943.

As a ground for reversal the appellants say the court erred in holding that the proposed drain was more feasible than another which was suggested. This subject may not be properly presented in this action. The right to organize, which right depends upon the question of whether or not there will be benefits, is the only subject of which the court may take cognizance in this action. That is the only subject embraced in the four sections of the statute under consideration here.

It is true that feasibility and route of drain is a matter for consideration in a drainage district such as this but that is a matter for engineering determination after the organization of the district. § 31-310, R. R. S. 1943.

It is urged as an objection to the organization of the district that, assuming that the lands of appellants were properly in the proposed district, other lands which would benefit were not included. This is not a valid objection. The fact that lands have not been included which would be benefited by the organization of the district is no bar to organization. A remedy is provided but that remedy is not refusal to allow organization. The remedy is to bring them in after organization. The remedy is provided by section 31-320, R. R. S. 1943.

Another objection is based upon the contention that it was not shown that the application was made by a majority in interest of a contiguous body of swamp or overflowed land within the meaning of section 31-301, R. R. S. 1943.

It is true that there may be doubt as to whether or not some of the land described in the application and owned by certain persons who signed the application may be regarded as contiguous, yet if all such questionably contiguous land is eliminated there still remains a compact body owned by three of the applicants constituting a body of contiguous land sufficient for the organization of a district.

Other tracts are separated from this compact body and from each other by considerable distances. Some of these distances are more than a quarter of a mile. Whether or not they may be regarded as contiguous depends upon the evident purpose of the legislation, a reasonable interpretation of the intent of the Legislature in the use of the term "contiguous," and an application of that intent to the facts as disclosed by the evidence.

The term "contiguous" has not been defined in the statute and it has only received but relative and indefinite definitions at the hands of lexicographers. Webster's New International Dictionary (2d ed.), Unabridged, gives the following definitions: "In actual contact; touching; also, near, though not in contact; neighboring; adjoining; near in succession."

The obvious purpose of the legislation was to provide means for reclamation of waste land and for improvement of the condition of land subject to overflow. This purpose could be accomplished only by a due understanding of and regard for the fundamental factors involved in reclamation from swamp and protection from overflow.

Two inevitably fundamental factors involved are the cause of the condition and the remedy, specifically here, the source or sources of the water producing the conditions and the outlet for relief against it.

The obvious intent of the Legislature was to provide for a practical plan for the effectuation of the purposes of the legislation.

Practically, as everyone knows, the primary source of water collected in swamps and causing overflow in this state is rainfall. Secondarily, in the course of nature, causes are retards inherent in topography and geological formation.

The record here discloses that while the described areas to be benefited are separated yet there is a natural course of flow or drainage from the west in a general

easterly direction for the entire length of the district which course extends in continuity through all of the areas. There is no constant flow of water but it reasonably appears that in times of heavy rainfall, which are very rare, this is the direction and course of natural flow of water through the proposed district. It also reasonably appears that except for the natural topographical retards represented by the elevation of the lands between the separated areas there would be constant drainage over the length of the proposed drainage way.

It further appears that there is no other reasonable outlet available for the drainage of the smaller areas to the west of and separated from the large compact area hereinbefore referred to.

If therefore these separated areas may not be regarded as contiguous to the main and larger area then it must be said that these provisions of statute would provide no means for the effectuation of the purposes of the statute.

If the purposes of the act are to be effectuated then it must be said that the legislative intention was that where swamp lands or lands subject to overflow are in the same course of drainage and though areas are separated but are so close together that each affects the other they must be regarded as contiguous.

The district court concluded that the areas described are contiguous within the meaning of the statute. The same conclusion is reached in this court.

Another contention is that the lands of appellants will not be benefited by the organization of the district. This objection does not relate to the question of whether or not the district shall be organized but only to the question of whether or not the lands of appellant shall be included. § 31-304, R. R. S. 1943.

In case the owner of real estate whose lands are in a proposed district seeks to have such lands excluded on the ground that they will not be benefited the burden

is on him to satisfy the court that they will not be benefited. § 31-304, R. R. S. 1943.

The district court found that the lands of appellants would be benefited and we have found nothing in the record which could properly lead to a different finding here.

The evidence of the witnesses on this question was in sharp conflict but we are inclined to the view that instead of it preponderating in favor of appellants, it preponderates in favor of appellees.

In addition to the evidence of witnesses the court, pursuant to a stipulation of the parties, viewed the area of concern and on the two arrived at its conclusion and decision. This inspection of the premises and the matters involved becomes a matter of evidence to be considered by this court on appeal. Keim v. Downing, *ante* p. 481, 59 N. W. 2d 602.

The appellants contend substantially that the court erred in holding that the district was in the interest of the public welfare and in refusing to hold that it was for the private purpose of parties who signed the application. The assignment is without merit. Public welfare is not made a matter of concern by the statutory provisions which have been considered and which have been proper for consideration herein. Appropriately no finding was made as to welfare.

In the brief is an assignment the effect of which is to say that two of the signers of the application were estopped to join in the application by reason of an agreement relating to drainage from their land to lands of the appellants. The agreement and its incidents will not be elucidated since it is so clearly obvious that private agreements between adjoining landowners with reference to the drainage of the adjoining land are foreign to any right to establish a drainage district under the statutory provisions involved here.

From a consideration of the entire record it is con-

cluded that the judgment of the district court should·
be and it is affirmed.

AFFIRMED.