In re Drainage District No. 100 of Grant County, Nebraska, a public corporation.

Dorothy A. Petersen et al., appellees, v. Mamie A. Thurston et al., appellants.

74 N. W. 2d 528

Filed February 3, 1956. No. 33840.

*Charles A. Fisher,* for appellants.

*William B. Quigley, Davis, Healey, Davies & Wilson,* and *Robert Berkshire,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Mamie A. Thurston and her husband Clyde A. Thurston, hereinafter called defendants, appealed to the district court from the decision and judgment of the board of supervisors of Drainage District No. 100 of Grant County, hereinafter called the district, which overruled defendants' objections and approved the report of the district engineer classifying and assessing 174 acres of defendants' land for benefits thereto by proposed construction thereon of drainage works and improvements. After a hearing whereat evidence was adduced by the parties, the trial court rendered a judgment which approved and affirmed the decision and judgment of the board of supervisors, hereinafter called the board. After describing each tract of land within the district and naming the respective owners thereof, the judgment provided: "It is further ordered that the total acreage of each land owner to be equally benefited and equally assessed in this drainage district is as follows: Rolf H. Brennemann - 291.50; Kurt W. Brennemann - 70.0; George S. Peterson - 31.0; Dorothy A. Petersen - 117.50; Bert Hayward - 84.50; William L. Hayward - 17.0; Mamie A. Thurston Clyde A. Thurston and Clyde Chester Thurston, as theri (their) separate interests may appear - 174.0. Total acres equally benefited - 785.50, and that the costs and expenses incurred by this drainage district shall be assessed equally on such acre unit in that the benefits to each unit acre will be uniform." Costs were taxed to defendants.

Motion for new trial filed by defendants and Chester Thurston, their son who claimed to have an interest in

some of defendants' property involved, was overruled, whereupon defendants appealed to this court assigning substantially that the judgment of the trial court was not sustained by the evidence but was contrary thereto and contrary to law. We conclude that the assignments should not be sustained.

No question is raised or presented here with regard to procedure followed prior to or in the hearing before the board or upon appeal to the district court or this court. The named members of the board appear herein as ostensible appellees. Such persons, as well as others who were members of the district, except defendants, will be hereinafter designated by name.

Petersen v. Thurston, 157 Neb. 833, 62 N. W. 2d 68, was a proceeding instituted in the district court for Grant County for the purpose of organizing the district here involved. Therein defendants, who concededly did not sign the original articles and application, filed objections to the inclusion of their land within the district upon the ground that the land would not be benefited in any manner thereby. The trial court in such proceedings found and adjudged that defendants' land would be benefited, and included it within the district. Upon appeal therefrom we affirmed such finding and judgment.

Therefore, defendants' contention in the case at bar that their land would not be benefited in any respect by the proposed drainage works and improvements has already been adjudicated and the only questions now presented for determination here are as follows: (1) Whether or not, as contended by defendants, the trial court erred in affirming an assessment allegedly made by the decision and judgment of the board not only upon that portion of defendants' land actually taken for construction of the ditch but also that portion adjacent to the borders of the ditch, the use of which was reserved by the district for purposes of operation and maintenance if and when such became necessary; and (2) whether

or not, as contended by defendants, the trial court erred in affirming the assessment made by the district engineer and approved by the board upon 174 acres of their land. We conclude that the trial court did not err in affirming the assessment as made.

With regard to defendants' first contention, the record discloses that the ditch on defendants' land would be 4 feet wide at the bottom, with 1:1 slopes which would slightly vary the width of the ditch at the top, dependent upon the depth of the ditch as it was constructed along and over defendants' low lands. A note appearing upon exhibit 1, a plat prepared by the district engineer and received in evidence, read: "It is necessary that a 4-rod wide right of way, extending 2 rods to each side of the center line of all of the drain canals of the District, shall be reserved for the purpose of operation and maintenance of all such canals if and when such maintenance should become necessary." Thus, the reserved conditional use of such land on each side of the borders at the top of the ditch was not land actually taken and appropriated by the district as a right-of-way of the ditch. Thereby the district simply reserved an easement over such portion to be used by it only for operation and maintenance purposes if and when that should become necessary. There is no evidence whatever that such use would be perpetual or necessary at all times so as to deprive defendants of that land and the use thereof. The only logical inference in the absence of any other evidence with relation thereto is that defendants would have the beneficial use of such well-drained portion of their land right up to the borders of the ditch and that such portion should have been assessed.

In Nemaha Valley Drainage Dist. v. Stocker, 90 Neb. 507, 134 N. W. 183, this court held: "In levying an assessment by a drainage district, that portion of land taken for the right of way of the ditch should not be assessed to the landowner from whose premises it is taken." In the opinion it is said: "It is clear that, if the

land is taken from appellant by the construction of the ditch, he ought not to be compelled to pay for benefits to property of which he is deprived by the very act of construction. We think this was erroneous, and the appellant is entitled to be relieved from the assessment to the extent that it is based upon land actually appropriated by the district." See, also, 28 C. J. S., Drains, § 57, p. 404; 19 C. J., Drains, § 211, p. 717, and authorities cited.

The land actually appropriated and taken from defendants as a right-of-way of the ditch was only that portion necessary for construction thereof. In that connection, the shaded portions of land outlined upon exhibit 1 and verified by testimony of the district engineer show that 175.5 acres of defendants' land would be equally benefited by the drainage works and improvements, but concededly only 174 acres thereof were classified and assessed. Thus, contrary to defendants' contention, 1.5 acres of defendants' land which was actually taken and appropriated by the district for right-of-way of the ditch was not assessed. In that connection, defendants have failed to adduce any evidence which would sustain a conclusion that they were deprived of any more of their land by actually taking the same or by the very act of construction.

We turn then to defendants' second contention. In that regard, the two Petersens, the two Brennemanns, and Bert Hayward were all members of the district and its board. William L. Hayward and defendants were the only other members of the district. Defendants were also the only members of the district who objected in any manner to the classification and assessments. However, defendants contend as one basis for relief that the lands of the Petersens, the Haywards, and Kurt W. Brennemann would not benefit by the drainage works and improvements, and that only the land of Rolf H. Brennemann would be benefited thereby. That contention has no merit, not only because it has already

been adjudicated in Petersen v. Thurston, *supra,* but also because there is not sufficient competent evidence to sustain it, and if there were, defendants could obtain no relief simply upon the ground that the lands of such other persons who did not object had been classified and assessed at too great a portion of the assessment rather than not assessed enough. In that connection, it is said in 28 C. J. S., Drains, § 67, p. 429: "All interested persons are entitled to object to the assessment, whether as to the apportionment or to the total assessment. However, the validity of drainage assessments can be questioned only by those landowners who are prejudiced by the defects complained of." Also, in 28 C. J. S., Drains, § 72, p. 440, speaking of drains and assessments, it is said: "It is essential that the party seeking relief on appeal must have been injured by the decision from which the appeal is taken."

The question still remaining then is whether or not the court erred in affirming the assessment made by the district engineer and approved by the district board upon 174 acres of defendants' land. We conclude that the trial court did not err in so doing.

In arriving at that conclusion, there are well-established, applicable, and controlling rules of law to consider. It is provided by statute that upon appeal to the district court from a decision and judgment of the board of supervisors of a drainage district classifying lands and assessing benefits, all original objections made thereto shall be heard and determined in a summary manner as in equity. § 31-329, R. R. S. 1943. Thus, upon appeal to this court from the judgment rendered therein by the district court, the cause is tried de novo.

Also, concededly, upon such an appeal to the district court, the drainage district is the moving party and has the burden of proving the validity of the classification and the amount of the benefits by a preponderance of the evidence. As said in Drainage Dist. v. Bowker, 89 Neb. 230, 131 N. W. 208: "The drainage district has

the affirmative side of the proposition, and should first present its evidence in order to maintain its position. No doubt the report of the engineer when approved and confirmed by the drainage board is prima facie evidence of the matters therein required to be stated, but this fact does not change the burden of proof. If the drainage district has the burden, it can use the engineer's report, if so confirmed and approved in the first instance, as evidence to sustain that burden. However, when the evidence is all before the court * * * the burden of proof as to the amount of benefits to the land of the defendant (for the landowner is virtually a defendant) is upon the drainage district."

In Dodge County v. Acom, on rehearing, 72 Neb. 71, 100 N. W. 136, this court said: "The land is covered with swales and depressions, where the waters accumulate and slowly seep away or evaporate. It is a matter of common knowledge that drainage benefits such land, but the manner and extent of such benefits are best known and understood by engineers, who are experts in the matter of sanitation and land drainage. Therefore when the engineer in charge of such work has examined the lands, has made his estimates, and reported them to the county board, in the absence of fraud, such report ought to, and does, furnish prima facie evidence of the benefits which will accrue to each tract of land, and such evidence is sufficient to sustain the orders of the board, unless it is overcome by competent proof to the contrary. The engineer who had charge of the improvement in question, in addition to his findings and report, stated on the witness stand that all the lands included in his report would be benefited, and that he did not know of a foot of that land but what the water falling on it would get into the ditch. It does not necessarily follow that, because some of the land does not lie on or touching the ditch, such land will not be benefited by its construction and maintenance. Where bottom land, like that described by the evidence

herein, is saturated and filled with water, it takes a long time, in the course of natural drainage, or by evaporation, for it to dry and become fit for cultivation. If, however, it is situated near a well constructed ditch, the land adjacent to and touching the ditch will quickly be drained of its excess of water, and this will enable the waters falling upon adjacent lands to speedily work their way into the ditch; and such lands, though not joining or touching the ditch, will surely be benefited thereby."

Also, as said in Nemaha Valley Drainage Dist. v. Stocker, *supra*: "The benefits must be assessed as nearly as may be just under all the circumstances surrounding each tract. Exact nicety of apportionment as to each square yard or square rod is impossible. If the result of the improvement will be to specially benefit each tract or subdivision as a whole it is immaterial whether within its limits there are portions which are not susceptible of cultivation and the value of which if taken by themselves and disconnected from the remainder of the tract would not be enhanced."

As stated in 17 Am. Jur., Drains and Sewers, § 74, p. 823: "As is fully shown in another article, the law does not require that special assessments correspond exactly to the benefits received; on the contrary, it is a matter of common knowledge that absolute equality cannot be attained, and so long as a fair and reasonable method of spreading the assessment is followed, the courts will not intervene for minor inequalities. But when it clearly appears that an assessment is arbitrary and unreasonable, the courts will accord protection."

In Nemaha Valley Drainage Dist. v. Marconnit, 90 Neb. 514, 134 N. W. 177, it is said: "At the outset it is well to say that a uniform and exact apportionment of the benefits to each tract of land is an impossibility in most cases. The most that any officer or tribunal can do is to estimate the benefits to each tract upon as uniform a plan as may be in the light afforded by the evi-

dence and by a personal examination and inspection."

As said in Nemaha Valley Drainage Dist. v. Higgins, 90 Neb. 513, 134 N. W. 185: "The testimony shows that both of these tracts were in part subject to overflow, but that each tract was not liable to be entirely flooded. Among other things, it is insisted that, because each entire tract is not subject to be covered with water, the assessment is not confined to the land benefited, is unjust, and cannot be sustained. It is clearly impossible to make an assessment according to the varying contour lines of the high water mark. The only practicable method is to assess the land benefited as nearly as may be according to the actual boundaries of the land of each proprietor or with reference to government subdivisions."

In Omaha & North Platte R. R. Co. v. Sarpy County, 82 Neb. 140, 117 N. W. 116, this court said: "This court has lately had occasion to consider this question, and has held that the term 'marsh' or 'swamp lands' has a wider significance than the terms 'marsh or swamp,' and that the provisions of the act may properly apply to land which from its low and level character may, from excessive rainfall, retain at some seasons of the year sufficient water so that it is rendered incapable of cultivation. Campbell v. Youngson, 80 Neb. 322. It is there expressly said that power is conferred by this act 'to drain lands which are not, strictly speaking, "marshes" or "swamps," but which are "marsh or swamp lands," meaning thereby lands which are so situated as to be rendered difficult or incapable of successful cultivation by reason of retaining in the soil or carrying on the surface an excessive quantity of water during certain portions of the year, even though at other times they may be as solid, dry and firm as lands in general.'" Section 31-301, R. R. S. 1943, now reads "swamp or overflowed lands" which would not change the above application.

Finally, in Dodge County v. Acom, 61 Neb. 376, 85 N. W. 292, affirmed on rehearing, 72 Neb. 71, 100 N. W.

136, and approved in Baker v. Morrill Drainage Dist., 98 Neb. 791, 154 N. W. 533, this court held: "In determining special benefits accruing to land by reason of the construction of a drainage ditch, it is proper to take into consideration whatever will come to the land from the drain to make it more valuable for tillage, or more desirable as a place of residence, or more valuable in the general market, the true and final test being what will be the influence of the proposed improvement on the market value of the property."

In the light of such authorities, we have examined the record, which summarized disclosed as follows: In compliance with section 31-310, R. R. S. 1943, the board caused a complete topographical survey to be made of the district by W. F. Chaloupka, its graduate engineer, who had more than 40 years of experience as such in that territory. The area included within the boundaries of the district is located some 6 to 8 miles north of Hyannis in both Grant and Cherry counties. It lies within the upper reaches of the Middle Loup River basin, entirely within the area of the sandhills in that region. It extends and generally drains a part of accumulated waters from west toward the east, thence to the northeast, terminating on defendants' land at the Dumbbell Ranch drain. As required, the district engineer made a complete topographical survey of the district and submitted it to the board with maps and profiles of such survey and a full and complete plan of draining, reclaiming, and protecting the lands in the district from the overflow or damage by water or floods.

As required by section 31-312, R. R. S. 1943, the district engineer went over, inspected, and examined the lands and other property in the district which might be affected by the proposed drainage and reclamation works and improvements and also the streams, watercourses, ditches, ponds, lakes, and bayous within the district, or partly within and partly without the district. Further, the maps and profiles drawn by him and submitted

to the board complied in every material respect with section 31-318, R. R. S. 1943, and his report was filed as required by such section.

In conformity with section 31-311, R. R. S. 1943, the district engineer also made an estimate of the cost of the entire drainage works and improvements required in the district to protect and reclaim the lands and property showing the several items of the same.

Section 31-313, R. R. S. 1943, provides in part: "The engineer shall assess, as hereinafter directed and according to the rules hereinafter prescribed, the amount of benefits which will accrue to each tract or parcel of land * * * by virtue of the works and improvements of the drainage district. Each tract or parcel of land, * * * within the district shall bear its share of the entire cost and expenses incurred by the district in making such works and improvements in proportion to the benefits assessed, whether such improvements be made on the tract or parcel of land * * * or not."

Section 31-315, R. R. S. 1943, provides that: "No assessment shall be made for benefits to any lands upon any other principle than that of benefits derived, but all assessments shall be made upon the basis of benefits derived and secured by reason of the construction of such improvements and works in affording drainage, or giving an outlet for drainage, protection from overflow, and damage from water."

Section 31-317, R. R. S. 1943, provides in part: "The engineer shall also classify all lots, tracts, lands, and other property according to the benefit that each may receive from such drainage improvement, and the lots, tracts, and lands receiving the greatest percentage of benefits shall be classified at one hundred, those receiving a less percentage of benefit at such less number as its benefit may determine."

The district engineer testified as a witness for the district and his filed report, including the survey, maps, profiles, plan, estimate of cost, and classification of as-

sessments prepared by him and approved by the board in compliance with related statutes, properly appear in the record as part of the district's evidence. He testified that such exhibits were correct and accurate in every respect and truly reflected the facts therein set forth, and that the classification and assessments made by him, approved by the board, and affirmed by the district court, were fair, just, and equitable.

His examination, study, and surveys of the land were made in 1950 and again in 1952. He also subsequently inspected the lands and reviewed his surveys three times before the trial. He testified that the number of acres of land heretofore set forth belonging to each and all members of the district and receiving the greatest percentage of benefits should be and were classified and assessed equally at 100, as required by sections 31-311 to 31-318, R. R. S. 1943. He further testified that he could also have included some marginal lands belonging to each of the seven landowners in the district which would have received but little if any benefit, but that to have done so would not have affected the total assessment of each landowner, and there is no competent evidence to the contrary. Unless defendants could establish by competent evidence, and they did not do so, that the failure to assess lands receiving a percentage of benefits at less than 100 would have reduced their assessment, defendants are in no position to complain. We find no gross departure from the method of assessment required by statute as occurred in Drainage Dist. No. 1 v. Village of Hershey, 139 Neb. 205, 296 N. W. 879, relied upon by defendants. In other words, as heretofore noted, exact nicety of apportionment is impossible, and it is sufficient if the benefits are uniformly assessed as nearly as may be fair, just, and equitable under all the circumstances surrounding each and all tracts. See, also, Drainage Dist. No. 1 v. Village of Hershey, 145 Neb. 138, 15 N. W. 2d 337.

The report of the district's engineer and his testimony

as well disclose that the entire district area consists of lakes and old lake beds, high rolling sandhills, and flat, low, wet, and swampy meadow lands, which are more or less swampy and very wet most of the year except at times of severe drought or late in the fall; and that during the wet season the area here involved all becomes flooded and heavily saturated with water, resulting in hay crop damage and heavy loss. He testified that it was not intended to drain the sub-soil or to lower the ground waters but rather to control and preserve same by concrete structures incorporated in the ditches in order to quickly intercept and carry off only flood waters from heavy rains and early spring thaw waters before material damage could result to growing crops or those being harvested. He testified that the acres included in the whole area involved are similar in every respect over the entire district; that they were most susceptible to flood and in need of drainage; and that the classification and assessments were uniform and proper in every respect.

The testimony of one Robert Paul, theretofore given in Petersen v. Thurston, *supra,* was offered by defendants and read in evidence by stipulation. He was an engineer with experience in drainage and irrigation work, although he had no former experience with such work in sandhill territory such as that here involved. He made a cursory survey of the district and was never upon the land therein except for a few days in August 1953 and once after that time. He testified with regard to elevations and contours of lands in the district, thereby leaving the inference that defendants' 174 acres of land would not be benefited by construction of the proposed drainage works and improvements but that such low, wet lands, with some rushes or coarse grass upon it, could as well be drained if defendants dug their own ditches. However, upon cross-examination, referring to defendants' land, he testified as follows: "Q. Isn't it true Mr. Paul, this land could be in flood condition

and badly in need of drainage, and you from your present investigation would have no knowledge of the condition? A. And again I would say that it is a matter of opinion, 'It is badly in need of drainage'. Some people say it does and some say it doesn't and from my knowledge I would say it could be either way. Q. Lets establish the time you have actually seen this area. When was the first time, Mr. Paul? A. The first time I was on it was probably August 27 and August 28 and 29, and the 26th. I believe I was there three or four times in that week and I saw it once since then and that is the only time I have seen it. Q. Were you told at the time you were making your investigation that this was an extreme drought condition in this area and probably the worst dry period that they have had through that area; did you have that information? A. Yes, sir, I did. Q. Did you, Mr. Paul, attempt to define in any of the drainage area, the high water point of the area of flood water? A. No, because I did not feel with the time that was alloted to me to do this work, that I could do it and all I did was to run profile down through what I considered the place the water would drain and I just profiled in order to actually determine where the water would stand under any condition without actually seeing it stand, not as ice but as water. I would have to make a complete contour map of the area unless you saw the water actually standing. Q. So in my limited understanding of the survey, you were finding the low points on the whole area? A. Yes, to show where the water would run if any running. Q. And that is all this map proposes to do? A. Yes, and the fall. Q. But it covers the low parts? A. It is not meant to determine the amount of benefit. Q. And as you make your findings and the findings by the Exhibit 1, they coincide exactly or almost exactly? A. As to the amount of fall, yes. I have located the two culverts on here and it seems we used the same bench marks and followed almost the same course, our distances are very close

and the elevations checked almost identical. Q. Almost surprising to find such correlation? A. I don't think either of us are surprised. Q. Both were accurately done? A. Yes, sir." As heretofore noted, exhibit 1 was the plat prepared by the district engineer.

In the light of such evidence, we conclude that the testimony of defendants' engineer did not materially affect or dispute in any substantial manner that given by the district engineer.

Defendants and their son also testified as witnesses in defendants' behalf. They testified in substance that there were some low spots and ponds on their land involved, and that some waters from Rolf H. Brennemann's wet, swampy land on the west drained down upon it, but they had been able to harvest their hay thereon every year since 1950 except in 1952, which was a particularly wet year. They admitted that there was ice on and over their valley during the winter months which generally had accumulated from the west end, and that it was still there at time of trial in February 1955. They also admitted that in the blizzard of 1949 some 50 or 60 of their cattle died on such ice. They testified that they would rather have evaporation or percolation; that the proposed drainage works and improvements would not benefit their land in any respect because they had plenty of drainage if the water from the west was not dumped down on their land; and that the ditch would lower their water level, would be a hazard for their livestock, and an inconvenience in harvesting their hay, despite the construction of adequate culverts or bridges as proposed.

Defendants' contention that their land would receive no benefit from the proposed drainage work and improvement is untenable. That question has not only been already adjudicated but also there is not sufficient competent evidence in the record to sustain such a conclusion. Further, there is no competent evidence with relation to any data, yardstick, criteria, or standard upon

which the trial court or this court could predicate a percentage of benefits to defendants' 174 acres of land except upon the basis of 100 established by the district by a preponderance of the evidence.

We conclude that the district sustained the burden of proof by a preponderance of the evidence, and that defendants' evidence was insufficient to sustain their contention that the classification and assessment of their land should not be sustained. Therefore, the judgment of the trial court should be and hereby is affirmed. All costs are taxed to defendants.

AFFIRMED.