BOYER, Judge.
Union Camp Corporation, hereinafter referred to as Petitioner, filed a Petition in the Circuit Court in and for Volusia County seeking to have formed a drainage district pursuant to Chapter 298 Florida Statutes 1971, the district to be named Seminole Forest Water Management District. The petition alleges, inter alia, that Petitioner is the owner of all of the lands “embraced and included within the boundaries of the aforesaid proposed drainage district, amounting in the aggregate to approximately 38,374.17 acres.” It is further alleged “that all of said lands owned by Petitioner are contiguous to each other and are wet and overflowed and subject to overflow.” Attached to the petition is a map of the proposed drainage district, viz: a map of the lands described and referred to in the petition. That map reflects six parcels of property within the perimeter of Petitioner’s lands, that is, totally surrounded by Petitioner’s lands, but which parcels are not included in the description contained in the petition of the lands sought to be included in the proposed district. Those parcels, subsequent pleadings reveal, are owned by Theodore Strawn, Inc. and others and those parcels will hereinafter be collectively referred to for convenience as the Strawn parcels. In due course the parties entered into the following stipulation:
“That the lands of Union Camp described in the Petition are contiguous lands subject to overflow.
“That the ‘Haw Creek Valley’ is a contiguous body of land subject to overflow; that the Union Camp parcel described in the Petition is a contiguous part of the ‘Haw Creek Valley’ and that neither Union Camp nor its land constitutes a majority of the landowners or a majority of the acreage within the ‘Haw Creek Valley.’ ”
*421 The State of Florida, the County of Vol-usia, the owners of the Strawn parcels above mentioned, and several owners of adjacent lands filed objections to the creation of the proposed water management district and each filed motions to intervene.
The trial court thereafter entered an order accepting the above quoted stipulation and allowing intervention by all parties who had filed motions to intervene, permitting them to “be heard on all grounds raised in their pleadings which test the legal sufficiency of the Union Camp Corporation’s petition for creation of a drainage district and/or which are directed at the issue of whether Petitioner owns a majority of the acreage of a contiguous body of lands subject to overflow as contemplated by Chapter 298 of the Florida Statutes.”
In due course the trial court entered an order denying the petition to form the drainage district. That order contains the following recitation:
“The question before the Court is whether Chapter 298 of the Florida Statutes requires a petition by the owners of a majority of the acreage of lands within the proposed district or whether it requires a petition by the owners of a majority of the acreage of a contiguous body of lands subject to overflow.”
The essential holding of the trial court is reflected by the following concluding recitation in its order of denial:
“The Court cannot condone a district gerrymandered in this fashion nor can it accept the proposition that any single land owner may establish a public corporation with all the powers incident thereto of his contiguous wet lands when his parcel is only a part of a larger contiguous tract likewise subject to overflow.”
It is from the last mentioned order that this appeal is taken. Several points have been raised which merit our consideration.
First, Petitioner urges that the trial court erred in allowing the adjacent land owners to intervene and be heard incident to the initial petition for incorporation and formation of the drainage district, pointing out that the legislature has provided in Chapter 298 a multi-step procedure, the first step being the incorporation of the district as provided in Sections 298.01 through 298.07. A careful reading of Chapter 298 supports Petitioner’s position that the legislature intended a multi-step procedure and it is true that the first seven sections of the Chapter which deal with the initial formation of the corporation refer only to owners of property in the proposed district. However, although the writer of this opinion readily concedes that he agrees with Petitioner’s position, the issue as to whether adjacent land owners have a standing to seek intervention to contest the petition to incorporate the drainage district has been determined adversely by this Court’s opinion in McKinnon v. Atlantis Water Management District, Fla.App.1st 1973, 281 So.2d 909, certiorari granted and discharged (with dissent) by the Supreme Court of Florida by opinion filed June 19, 1974, 299 So.2d 594; rehearing denied September 23, 1974. The McKinnon case was pending before this Court at the time the briefs were written by the parties in the case sub judice but was not decided until after oral arguments herein and it was not finally considered by the Supreme Court until after this opinion was in the process of preparation.
The County of Volusia clearly has standing to intervene in that its petition specifically alleges that it is the owner of lands in the proposed district; but we can find no authority either in the Statute nor in the McKinnon case authorizing the intervention of the State of Florida ex rel. Robert Shevin, as Attorney General, in the initial step of formation of the corporation under Sections 298.01 through 298.07.
We next consider the contention of appellees that the reference in Section 298.01 to “majority of owners” or “Owners of a majority of the acreage” means that *422 one person or corporation cannot form a drainage district. This argument is without merit. It is clear that the word “owners” also means “owner”. No other construction would make sense. It is to be noted that Section 298.03(3) refers to “written approval or consent of the owner or owners of a majority in acreage of the lands within said district.” (Emphasis added) Further, Florida Statute 1.01(1) provides that in the construction of all of the Florida Statutes “the singular includes the plural and vice versa.” Such construction has been applied by the Florida Courts: For example, in Board of Public Instruction of Broward Co. v. Doran, Sup.Ct.Fla.1969, 224 So.2d 693, the Court held that the word “citizens” in a statute authorizing issuance of injunctions upon application by “citizens”, should be construed to include “one citizen.”
We next turn to the interpretation of the term or phrase “a majority of the owners, or the owners of a majority of the acreage of any contiguous body of wet or overflowed lands or lands subject to overflow” as used in Section 298.01. The Circuit Judge obviously interpreted Section 298.01 to require a petition by a majority of the owners of all lands which are subject to overflow and which are contiguous. Stated another way, the Circuit Court held that Section 298.01 requires the majority of the owners of the acreage of the largest land mass subject to overflow to join in the petition. Factually, the Court held that the largest land mass subject to overflow was the Haw Creek Valley, and that since the lands in the proposed district were a “contiguous part of the Haw Creek Valley” and it being admitted that the Petitioner was not the owner of a majority of the lands in the Haw Creek Valley, the petition was denied.
We find and hold that in so ruling the Circuit Court erred. It appears to us that the legislative intent, as well as the language chosen to express that intent, is clear. The unambiguous words employed in the Statute leads us to the holding that only the owner or owners of a majority of any contiguous body of wet or overflowed lands, or lands subject to overflow, need join in the initial petition for the formation of a drainage district. How else may we explain the provisions of Section 298.08 which deals with “two or more adjacent districts” ? Obviously, if it were necessary for a petition to include the owner or owners of a majority of all contiguous lands subject to overflow there could not be “two or more adjacent districts.”
In Tervin v. State ex rel. Landis, 1934, 116 Fla. 633, 156 So. 627, the Supreme Court of Florida described the requisite signatures for a drainage district petition as those of “a majority, either in numbers or acreage, of the owners and holders of the body of land sought to be included in the district.” (Page 629, emphasis added)
The Florida Supreme Court, in State ex rel. South Brevard Drainage Dist. v. Smith, 1936, 126 Fla. 231, 170 So. 440, recognized that the original law in Florida was patterned after the model drainage district act which was generally adopted in the Middle-Western states. In reviewing these statutes, it is seen that the Nebraska Statute is analagous. Section 31-301 of the Nebraska Statute reads in part:
“31.301. Drainage districts organized by proceedings in District Court; formation; Articles of Association; contents. A majority in interest of the owners in any contiguous body of swamp or overflowed lands in this state, situated in one or more counties in this state, may form a drainage district for the purpose of having such land reclaimed and protected from the effects of water, by drainage or otherwise. . . . ”
In discussing this statute at length, the Nebraska Supreme Court stated:
“It is urged as an objection to the organization of the district that, assuming that the lands of appellants were properly in the proposed district, other lands which would benefit were not included. *423 This is not a valid objection. The fact that lands have not been included which would be benefited by the organization of the district is no bar to organization. A remedy is provided but that remedy is not refusal to allow organization. The remedy is to bring them in after organization.” In re Drainage Dist. No. 100 of Grant County, (1954) 157 Neb. 833, 62 N.W.2d 68, 70-71.
Section 298.01 provides that “owners of the majority of the acreage of any contiguous body of wet or overflowed lands or lands subject to overflow” may petition for the creation of a proposed district. It is an established principle that where the language of a statute is clear and unambiguous and conveys a clear and definite meaning, courts should not resort to rules of statutory interpretation and construction. The statute must be given its plain and obvious meaning. Owen v. Cheney, Fla.App.2d 1970, 238 So.2d 650; State v. City of Pensacola, Sup.Ct.Fla.1961, 126 So.2d 566; Vocelle v. Knight Brothers Paper Company, Fla.App.1st 1960, 118 So.2d 664; Ross v. Gore, Sup.Ct.Fla.1950, 48 So.2d 412; Clark v. Kreidt, 1940, 145 Fla. 1, 199 So. 333; A. R. Douglass, Inc. v. McRainey, 1931, 102 Fla. 1141, 137 So. 157. Contrary to the Circuit Judge’s ruling, Section 298.01 is unambiguous as applying to “any” portion of the land subject to overflow. The Circuit Judge evidently relied upon the phrase “any contiguous body” in Section 298.01. It is clear and unambiguous that this phrase merely means that the lands within the proposed district must be contiguous. The Court erred in its construction and interpretation of this provision because Section 298.01 is unambiguous.
Finally we turn to a consideration of the “Strawn parcels”. Although the total acreage contained in those excluded parcels are relatively insignificant in size when compared to Petitioner’s lands, nevertheless it appears to us that those parcels are “in the proposed district” and cannot be excluded by simply drawing a line around them on the map of the proposed district. Although a somewhat different factual situation was involved, this point was resolved in the McKinnon case, supra, wherein this Court stated:
“Secondly, we hold that the proponents of a drainage district cannot eliminate the affirmative defenses of landowners initially included in the proposed district by the device of eliminating the lands of those objecting. * * * ” (281 So.2d at page 913)
The order appealed is therefore affirmed in part and reversed in part and this case is remanded for further proceedings consistent herewith.
It is so ordered.
SPECTOR, Acting C. J., and JOHNSON, J., concur.