CITY OF OMAHA, A MUNICIPAL CORPORATION, APPELLEE,
v. SANITARY AND IMPROVEMENT DISTRICT NO. 287
OF DOUGLAS COUNTY, NEBRASKA, APPELLANT.
DAIN, KALMAN & QUAIL MUNICIPAL-NEBRASKA, INC.,
APPELLEE AND CROSS-APPELLANT, v. SANITARY AND
IMPROVEMENT DISTRICT NO. 287 OF DOUGLAS COUNTY,
NEBRASKA, ET AL., APPELLANTS AND CROSS-APPELLEES.
334 N.W.2d 429

Filed May 20, 1983. Nos. 82-149, 82-150.

Thomas J. Guilfoyle of Thomas J. Guilfoyle, P.C., for appellant S.I.D.

Herbert M. Fitle, City Attorney, and Charles K. Bunger, for appellee City.

Kenneth C. Stephan of Knudsen, Berkheimer, Richardson & Endacott, for appellee Dain, Kalman & Quail.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, and CAPORALE, JJ., and COLWELL, D.J., Retired.

HASTINGS, J.

The City of Omaha (Omaha) and Dain, Kalman & Quail Municipal-Nebraska, Inc. (DKQ), separately appealed the decision of the board of trustees of Sanitary and Improvement District No. 287 (S.I.D.), sitting as a board of equalization, which determined the general and special assessments to be levied on the property within that district. These two matters were consolidated for trial in the District Court for Douglas County and on appeal to this court. The District Court, in relevant part, agreed with the S.I.D. board that a $195-per-lot fee for connection of the S.I.D. sewer system to the sanitary sewer system of Omaha represents a general obligation of the entire district and should therefore be generally assessed against all property in the district.

The District Court disagreed with the decision of the board to generally assess a refundable portion of the underground electrical power connection fee for each lot. The court found this entire cost must be specially assessed against each individual lot. S.I.D. has appealed the court's decision as to this special assessment of the electrical hookup fee, and DKQ has cross-appealed that portion of the District Court's decision declaring the sanitary sewer hookup fee a general benefit which must be generally assessed against the entire district.

S.I.D. was formed pursuant to a decree filed November 4, 1976, by the District Court of Douglas County. The district is located immediately southwest of the intersection of 168th and Pacific Streets in Douglas County and is commonly referred to as the Rose Garden Estates. The district has been subdivided into 263 lots, Lots 262 and 263 being land reserved for a park. Lots 262 and 263 are not involved in this appeal. Since the inception of the district, various improvements have been made, including the institution of a gas system, land grading, construction of a sanitary sewer system, paving, and the installation of a water system and an under-

ground electrical power system. Dain, Kalman & Quail, acting as fiscal agent for the district, underwrote the construction warrants which S.I.D. used to pay for these improvements.

After these improvements were completed, a statement of their costs was prepared. Based on this statement, the board of trustees of S.I.D., sitting as a board of equalization, determined how these costs should be assessed, specifically against certain property or generally against the district as a whole. These assessments were based upon the recommendations of Thompson, Dreessen & Dorner, and specifically its employee, Charles Riggs, the engineering firm hired by the district to design these improvements and determine their costs.

Omaha and DKQ raised objections to various parts of this assessment schedule. Apparently, the district's board ignored these objections, since no change in the assessment schedule was made. As a result, both the city and DKQ appealed the decision of the board to the District Court for Douglas County. Many objections to these assessments were raised in the District Court, but only two have been appealed.

One such issue involves a $500-per-lot fee for connection to the underground electrical power system. The Omaha Public Power District installed this system and, by their agreement, charged $500 per lot as a connection fee. S.I.D. paid OPPD the entire $500-per-lot charge. By this agreement OPPD would refund $350 for each lot that was built on and connected to this system by February 1, 1983. The record indicates that to date 28 of 261 lots have been built on. Since $350 of this $500 charge was possibly refundable, the board only specially assessed $150 per lot for connection with the electrical system and generally assessed $350 per lot against the district.

Omaha and DKQ argued to the District Court that this entire fee should be specially assessed on each lot, and any refundable portion should simply be

passed on to the individual landowner. The District Court agreed and reversed the decision of the board. The court ordered the entire $500 fee to be specially assessed against each lot. S.I.D. has appealed this portion of the District Court's decision.

Another objection raised in the District Court, and which has been raised in this appeal, deals with a $195-per-lot charge placed on S.I.D. by Omaha. In order for S.I.D. to connect its sewer system to the Omaha sewer system, Omaha charged the district $195 per lot. S.I.D. classified this charge as a general obligation of the district and generally assessed this cost against the entire district. DKQ objected, arguing that this cost should be specially assessed at $195 on each lot. The District Court found that the connection does not confer any special benefit upon each lot, and therefore it held it should be considered a general obligation of the district. DKQ has cross-appealed this portion of the court's decision, claiming this cost should be specially assessed against each lot.

Before determining the propriety of the District Court's decision as to these assessments, we shall deal first with several procedural issues raised by S.I.D. in this appeal. The first issue has to do with the standard of review. S.I.D. claims the decision of the board should be given a presumption of regularity and should not be overturned unless it is clearly wrong, is arbitrary, or capricious. This argument fails under the plain language of the relevant Nebraska statute. Neb. Rev. Stat. § 31-749 (Reissue 1978) sets forth the method of appeal from a decision of an S.I.D. board of trustees sitting as a board of equalization. It provides that the District Court shall hear such appeals, and "The court shall hear and determine such appeal in a summary manner as in a case in equity and without a jury and shall increase or reduce the assessments as the same may be required to provide that the assessments shall be

to the full extent of special benefits, and to make the apportionment of benefits equitable.''

We have previously held, when interpreting statutory language granting a District Court the power to review a case "in a summary manner as in equity," that this gives the courts the power to review such matters de novo as in other equity actions. *Petersen v. Thurston*, 161 Neb. 758, 764, 74 N.W.2d 528, 533 (1956). As such, this court and the District Court may fully review the evidence presented and reach conclusions therefrom independent of those reached by the board. In short, we are not limited in our review of this case, and no presumption of validity is given to the board's decision.

S.I.D. also argues that DKQ has no standing. Section 31-749, referred to above, also is relevant to this question. That statute provides in relevant part: *"Notice* of the amount proposed to be assessed for such improvements against each separate piece of property shall be given to each owner of record thereof within five days after the first publication of notice of statement, plat and schedules and, within five days after the first publication of such notice, a copy thereof, along with statements of costs and schedules of proposed assessments, *shall be given to each person or company who*, pursuant to written contract with the district, *has acted as underwriter or fiscal agent for the district* in connection with the sale or placement of warrants or bonds issued by the district. Each owner shall have the right to be heard, and shall have the right of appeal from the final determination made by the board of trustees. *Any person* or any such municipality *feeling aggrieved may appeal* to the district court by petition within twenty days after such a final determination.'' (Emphasis supplied.)

Clearly, DKQ is entitled to notice under this section. It would be nonsensical to then say it does not have standing to contest or appeal the findings of the board. Clearly, DKQ is in such a position to be con-

sidered a "person . . . feeling aggrieved" by the decision of the board, and therefore has standing in this matter.

Not only does DKQ fit within this statute but, also, it may find standing under the general rule of law. DKQ has acted as the fiscal agent of S.I.D. since it was formed. As such, DKQ has underwritten construction warrants which have enabled the district to erect improvements. In order to retire the warrants, bonds must be issued to replace them. To enable the district to do so, revenue must be raised, by way of special assessments, to create a sinking fund to support this bond issue. In order to retire these warrants underwritten by DKQ, sufficient funds must be raised by way of special assessments by the district. This gives DKQ an interest, and it may suffer an injury different from that of the general public.

To have standing in a matter, the party involved must only show this, that is, an interest in the matter of the possibility of an injury that is different from that of the general public. *First Fed. Sav. & Loan Assn. v. Department of Banking*, 187 Neb. 562, 192 N.W.2d 736 (1971). DKQ's interest in this case is different from the general public's, in that it is in the position of a guarantor on these warrants which are to be retired by special assessment revenues. As such, it has standing to question the determination of what is generally and specially assessed in this case.

S.I.D. has also raised the objection that not all necessary parties have been joined in this action. This was done by way of answer. We need not reach the merits of this argument, since it has not been properly brought before us.

S.I.D. argues that all the landowners of the district should have been joined in this suit as party defendants. Assuming arguendo that this is correct, it is a defect which has existed since the filing of the petition. As such, it should have been attacked by way

of a demurrer and not in the answer. If such a defect in parties is not raised by way of a demurrer, it is waived. Neb. Rev. Stat. § 25-808 (Reissue 1979); *Cromwell v. Ward*, 192 Neb. 178, 219 N.W.2d 446 (1974).

Finally, S.I.D. raises two arguments with regard to the special assessment of the entire underground electrical power charge. First, S.I.D. complains that DKQ's objection only went to that portion which would not be refunded, i.e., $150. The record indicates that DKQ raised objection to these assessments on two occasions.

On February 13, 1981, DKQ objected by stating in a letter to S.I.D.: "We feel that it is not reasonable to expect that the refundable portion on the underground power will be returned to the District on all improved lots in the District. Therefore all lots that are not currently built upon should be specially assessed for underground power. Any lots that qualify for a refund from OPPD would be paid directly to Rose Garden Inc. A separate accounting would be required."

Later, on March 4, 1981, DKQ again objected by way of a letter, stating: "The refundable portion of the cost of underground power which will not be recovered under the District's agreement with Omaha Public Power District, because of failure to develop lots, should be specially assessed against the vacant lots."

These objections refer to more than just the nonrefundable portion of this charge. The argument of S.I.D. that DKQ and Omaha failed to specifically object to this potentially refundable charge being classified as a general obligation is unfounded and frivolous.

S.I.D. also argues that the refundable portion of this charge conveys no special benefit on each piece of property and therefore cannot be specially assessed. S.I.D. argues that since $350 of this charge is refundable, it cannot be a special benefit to this

property. While it may be true that a refundable charge represents no special benefit to a parcel of property, we point out that this fee is no longer refundable. The agreement between OPPD and S.I.D. stated that only those lots built on and connected to this underground power system by February 1, 1983, qualify for a refund. This date has passed, and the per-lot charge for connecting with this electrical system is now $500, without any refund. With this fact in mind, we now consider whether it is appropriate to specifically assess the entire $500-per-lot charge against each lot in the district.

The standard as to when an improvement is considered special or local, as conceded by both parties, is set out in *Hinman v. Temple*, 133 Neb. 268, 270-71, 274 N.W. 605, 607 (1937): " 'Whether an improvement is local or general depends upon the nature of the work, the situation of the improvement, the surrounding conditions, and whether the substantial benefits to be derived therefrom are local or general in their nature. * * * Whether an improvement is local or general is a question of law but whether the facts in a particular case bring an improvement within the definition of a local or general improvement is a question of fact, to be determined from all the facts and circumstances established by the evidence. * * * Whether or not an improvement is local or general depends upon the nature of the improvement and whether the substantial benefits to be derived are local or general in their nature. If its purpose and effect are to improve a locality it is a local improvement although there is incidental benefit to the public, but if the primary purpose and effect are to benefit the public it is not a local improvement although it may incidentally benefit property in a particular locality. * * * The fact that an improvement will be of advantage to the city does not change its character as a local improvement if primarily of material advantage to the adjacent property, and where the improvement enhances the value of ad-

jacent property as distinguished from benefits diffused by it throughout the municipality it is a local improvement.' ''

At trial Mr. Charles Riggs, the engineer who recommended to S.I.D. which costs should be specially and generally assessed, testified. It was he who recommended that the $350 charge be generally assessed. On cross-examination he testified that this cost should be generally assessed because it was refundable, and if it were not refundable it should be a specially assessable cost.

Mr. Joseph Berenis, an engineer with the Omaha Public Works Department, also was called to testify. He said, in his professional opinion, the underground power gave a special benefit to each parcel of property in the district and that its entire cost should be specially assessed against each lot.

Clearly, the installation of underground power to this district has specifically benefited each parcel of property. It is also clear from the record that but for the fact that part of this $500 charge is refundable, the entire charge should be specially assessed against each lot. As pointed out above, none of this $500 charge is refundable any longer. Since this improvement does specially benefit each parcel of property and none of the charge for this improvement may be refunded, the entire $500 is therefore specially assessed against each lot, as ordered by the District Court.

Finally, we turn to the issue raised by DKQ in its cross-appeal. It contends this $195 sanitary sewer connection fee should be specially assessed against each lot. The record indicates that the entire cost of constructing the sewer system within the district was specially assessed. In addition to this cost Omaha charged S.I.D. a connection fee on the basis of $195 per lot for the connection of the district's sewer system with that of Omaha. The record also reflects that this $195 per lot represented a fee

charged by Omaha to fund the construction of interceptor and outfall sewers which will service S.I.D., as well as other districts. This money is to be used for the construction of sewer systems outside S.I.D., which will benefit the entire district generally but will not benefit any parcel of property specifically or uniquely.

Under the evidence from the record and the standard from *Hinman v. Temple, supra*, it was proper for the District Court to find the $195-per-lot charge should be a general obligation of the district. As such, the decision of the District Court is affirmed.

AFFIRMED.